No. 24-7168

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE D.C. CIRCUIT

---

ERIC J. FLANNERY, and DRANE FLANNERY RESTAURANT, LLC, T/A THE BIG BOARD,

*Plaintiffs-Appellants*,

v.

MARK ECKENWILER, in his personal capacity, KAREN WIRT, in her personal capacity, CHRISTINE HEALEY, in her personal capacity, DREW COURTNEY, in his personal capacity, JOEL KELTY, in his personal capacity, and JAY ADELSTEIN, in his personal capacity,

*Defendants-Appellees*.

---

On Appeal from the U.S. District Court for the
District of Columbia, No. 23-cv-2804-ABJ

---

## APPENDIX

---

Robert Alt
David C. Tryon
Jay R. Carson
Alex M. Certo
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
robert@buckeyeinstitute.org
d.tryon@buckeyeinstitute.org
j.carson@buckeyeinstitute.org
a.certo@buckeyeinstitute.org

David L. Rosenthal
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
david@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

*Attorneys for Appellants*

# TABLE OF CONTENTS

**Docket Entries from U.S. District Court for the District of Columbia Case No. 23-cv-2804-ABJ**

**District Court Docket Sheet**..........................................................App. 01

**Docket Entry #1:** 10/13/2022 Complaint against District of Columbia Department of Health, et al............................................App. 07

**Docket Entry #18:** 11/27/2023 Defendants' Motion to Dismiss the Complaint .........................................................................App. 22

**Docket Entry #18-1:** 11/27/2023 Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint .........................................................................App. 24

**Docket Entry #18-3:** 11/27/2023 Exhibit 1: Advisory Neighborhood Commission 6C November 9, 2022, Meeting Minutes ...................App. 42

**Docket Entry #19:** 12/20/2023 Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Complaint .........................................................................App. 46

**Docket Entry #22:** 09/30/2024 Order Dismissing Case ..............App. 68

**Docket Entry #23:** 09/30/2024 Memorandum Opinion................App. 69

**Docket Entry #24:** 10/29/2024 Notice of Appeal .........................App. 85

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:23–cv–02804–ABJ

FLANNERY et al v. ECKENWILER et al
Assigned to: Judge Amy Berman Jackson
Demand: $20,000
 Case in other court:  USCA, 24–07168
Cause: 42:1983 Civil Rights Act

Date Filed: 09/25/2023
Date Terminated: 10/02/2024
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**ERIC J. FLANNERY**　　　　　　　represented by　**David Christian Tryon**
THE BUCKEYE INSTITUTE
88 East Broad Street
Suite 1300
Columbus, OH 43215
(614) 224–4422
Email: d.tryon@buckeyeinstitute.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay R. Carson**
WEGMAN HESSLER VALORE
6055 Rockside Woods Boulevard
Suite 200
Cleveland, OH 44131
216–642–3342
Fax: 216–642–8826
Email: jrcarson@wegmanlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Neilson Strawbridge**
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227–0548
Email: patrick@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. Alt**
THE BUCKEYE INSTITUTE
88 East Broad Street
Suite 1300
Columbus, OH 43215
(614) 224–4422
Email: robert@buckeyeinstitute.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alex Certo**
88 East Broad Street, Ste. 1300
Columbus, OH 43215
412–779–9242
Email: a.certo@buckeyeinstitute.org
*PRO HAC VICE*

**App. 01**

*ATTORNEY TO BE NOTICED*

**David Leighton Rosenthal**
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243–9423
Email: david@consovoymccarthy.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DRANE FLANNERY RESTAURANT, LLC**
*trading as*
BIG BOARD

represented by **David Christian Tryon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jay R. Carson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick Neilson Strawbridge**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. Alt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alex Certo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Leighton Rosenthal**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MARK ECKENWILER**
*in his personal capacity*

represented by **Helen Marie Rave**
OFFICE OF THE ATTORNEY GENERAL
District of Columbia
400 Sixth Street NW
District of Columbia, DC 20001
(202) 735–7520
Fax: (202) 741–0665
Email: helen.rave@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF

COLUMBIA
400 Sixth Street NW
Suite 10100.085
Washington, DC 20001
202–702–2910
Email: marcus.ireland@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KAREN WIRT**
*in his personal capacity*

represented by **Helen Marie Rave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTINE HEALEY**
*in his personal capacity*

represented by **Helen Marie Rave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DREW COURTNEY**
*in his personal capacity*

represented by **Helen Marie Rave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOEL KELTY**
*in his personal capacity*

represented by **Helen Marie Rave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAY ADELSTEIN**
*in his personal capacity*

represented by **Helen Marie Rave**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Daniel Ireland**
(See above for address)
*LEAD ATTORNEY*

**App. 03**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2023 | 1 | COMPLAINT against All Defendants with Jury Demand ( Filing fee $ 402 receipt number ADCDC–10372719) filed by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Eckenwiler, # 3 Summons Wirt, # 4 Summons Healey, # 5 Summons Courtney, # 6 Summons Kelty, # 7 Summons Adelstein)(Rosenthal, David) (Attachment 1 replaced on 9/25/2023) (zrtw). Modified docket text on 9/25/2023 (znmw). (Entered: 09/25/2023) |
| 09/25/2023 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY (Rosenthal, David) (Entered: 09/25/2023) |
| 09/25/2023 | | Case Assigned to Judge Amy Berman Jackson. (zrtw) (Entered: 09/25/2023) |
| 09/25/2023 | 3 | SUMMONS (6) Issued Electronically as to JAY ADELSTEIN, DREW COURTNEY, MARK ECKENWILER, CHRISTINE HEALEY, JOEL KELTY, KAREN WIRT. (Attachments: # 1 Notice and Consent)(zrtw) (Entered: 09/25/2023) |
| 10/25/2023 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alex M. Certo, Filing fee $ 100, receipt number ADCDC–10447471. Fee Status: Fee Paid. by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Declaration Certo Decl., # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Rosenthal, David) (Entered: 10/25/2023) |
| 10/25/2023 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– David C. Tryon, Filing fee $ 100, receipt number ADCDC–10447472. Fee Status: Fee Paid. by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Declaration Tryon Decl., # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Rosenthal, David) (Entered: 10/25/2023) |
| 10/25/2023 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jay R. Carson, Filing fee $ 100, receipt number ADCDC–10447473. Fee Status: Fee Paid. by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Declaration Carson Decl., # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Rosenthal, David) (Entered: 10/25/2023) |
| 10/25/2023 | 7 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert D. Alt, Filing fee $ 100, receipt number ADCDC–10447476. Fee Status: Fee Paid. by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Declaration Alt Decl., # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Rosenthal, David) (Entered: 10/25/2023) |
| 10/25/2023 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Patrick N. Strawbridge, Filing fee $ 100, receipt number ADCDC–10447478. Fee Status: Fee Paid. by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Declaration Strawbridge Decl., # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Rosenthal, David) (Entered: 10/25/2023) |
| 10/26/2023 | 9 | NOTICE of Appearance by Helen Marie Rave on behalf of All Defendants (Rave, Helen) (Entered: 10/26/2023) |
| 10/26/2023 | 10 | NOTICE of Appearance by Marcus Daniel Ireland on behalf of All Defendants (Ireland, Marcus) (Entered: 10/26/2023) |
| 10/27/2023 | | MINUTE ORDER granting 4 5 6 7 8 Motions for Leave of Alex M. Certo, David C. Tryon, Jay R. Carson, Robert D. Alt, and Patrick N. Strawbridge to Appear Pro Hac Vice only upon condition that the lawyers admitted, or at least one member of the lawyers' firms, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer.**Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Amy Berman Jackson on 10/27/23. (DMK) (Entered: 10/27/2023) |

**App. 04**

| | | |
|---|---|---|
| 10/27/2023 | 11 | NOTICE *of Filing Proof of Service* by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY (Attachments: # 1 Declaration Service)(Rosenthal, David) (Entered: 10/27/2023) |
| 10/27/2023 | 12 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JAY ADELSTEIN served on 10/13/2023, answer due 11/3/2023; DREW COURTNEY served on 10/13/2023, answer due 11/3/2023; MARK ECKENWILER served on 10/20/2023, answer due 11/10/2023; CHRISTINE HEALEY served on 10/25/2023, answer due 11/15/2023; JOEL KELTY served on 10/13/2023, answer due 11/3/2023; KAREN WIRT served on 10/13/2023, answer due 11/3/2023. (See Docket Entry 11 to view document). (znmw) (Entered: 10/30/2023) |
| 10/31/2023 | 13 | NOTICE of Appearance by Patrick Neilson Strawbridge on behalf of All Plaintiffs (Strawbridge, Patrick) (Entered: 10/31/2023) |
| 10/31/2023 | 14 | NOTICE of Appearance by David Christian Tryon on behalf of All Plaintiffs (Tryon, David) (Entered: 10/31/2023) |
| 10/31/2023 | 15 | NOTICE of Appearance by Robert D. Alt on behalf of All Plaintiffs (Alt, Robert) (Entered: 10/31/2023) |
| 11/01/2023 | 16 | Joint MOTION for Briefing Schedule by JAY ADELSTEIN, DREW COURTNEY, MARK ECKENWILER, CHRISTINE HEALEY, JOEL KELTY, KAREN WIRT. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Rave, Helen) (Entered: 11/01/2023) |
| 11/02/2023 | | MINUTE ORDER granting 16 Motion for Briefing Schedule. Defendants must respond to the Complaint by November 27, 2023. Plaintiffs' response is due by December 21, 2023. Defendants' reply is due by January 10, 2024. SO ORDERED. Signed by Judge Amy Berman Jackson on 11/2/2023. (lcabj2) (Entered: 11/02/2023) |
| 11/03/2023 | 17 | NOTICE of Appearance by Alex Certo on behalf of All Plaintiffs (Certo, Alex) (Entered: 11/03/2023) |
| 11/27/2023 | 18 | MOTION to Dismiss by JAY ADELSTEIN, DREW COURTNEY, MARK ECKENWILER, CHRISTINE HEALEY, JOEL KELTY, KAREN WIRT. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit)(Rave, Helen) (Entered: 11/27/2023) |
| 12/20/2023 | 19 | Memorandum in opposition to re 18 Motion to Dismiss filed by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (Attachments: # 1 Exhibit Proposed Order)(Rosenthal, David) (Entered: 12/20/2023) |
| 01/02/2024 | 20 | NOTICE of Appearance by Jay R. Carson on behalf of DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY (Carson, Jay) (Entered: 01/02/2024) |
| 01/10/2024 | 21 | REPLY to opposition to motion re 18 MOTION to Dismiss filed by JAY ADELSTEIN, DREW COURTNEY, MARK ECKENWILER, CHRISTINE HEALEY, JOEL KELTY, KAREN WIRT. (Ireland, Marcus) (Entered: 01/10/2024) |
| 09/30/2024 | 22 | ORDER granting 18 Motion to Dismiss. Pursuant to Fed. R. Civ. P. 58 and for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that defendants' 18 motion to dismiss is GRANTED and the case is DISMISSED. See Order for details. Signed by Judge Amy Berman Jackson on 9/30/2024. (lcabj2) (Entered: 09/30/2024) |
| 09/30/2024 | 23 | MEMORANDUM OPINION. Signed by Judge Amy Berman Jackson on 9/30/2024. (lcabj2) (Entered: 09/30/2024) |
| 10/29/2024 | 24 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 23 Memorandum & Opinion, 22 Order on Motion to Dismiss, by ERIC J. FLANNERY, DRANE FLANNERY RESTAURANT, LLC. Filing fee $ 605, receipt number ADCDC–11264117. Fee Status: Fee Paid. Parties have been notified. (Rosenthal, David) (Entered: 10/29/2024) |
| 10/30/2024 | 25 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 24 Notice of Appeal to DC Circuit Court,. (zdp) (Entered: 10/30/2024) |

| 10/31/2024 | | USCA Case Number 24–7168 for <u>24</u> Notice of Appeal to DC Circuit Court, filed by DRANE FLANNERY RESTAURANT, LLC, ERIC J. FLANNERY. (zdp) (Entered: 11/01/2024) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC J. FLANNERY<br>511 ½ 8th Street N.E.<br>Washington, D.C. 20002<br><br> and<br><br>DRANE FLANNERY RESTAURANT,<br>LLC, T/A THE BIG BOARD,<br>511 ½ 8th Street N.E.<br>Washington, D.C. 20002<br><br>       Plaintiffs,<br><br>v.<br><br>MARK ECKENWILER, in his personal<br>capacity<br>312 East Street N.E.<br>Washington, D.C. 20002,<br><br>and<br><br>KAREN WIRT, in her personal capacity,<br>234 East Street N.E.<br>Washington, D.C. 20002,<br><br>and<br><br>CHRISTINE HEALEY, in her personal<br>capacity,<br>10 4th Street N.E.<br>Washington, D.C. 20002,<br><br>and<br><br>DREW COURTNEY, in his personal<br>capacity,<br>506 M Street N.E.<br>Washington, D.C. 20002,<br><br>and | CIVIL ACTION NO.<br><br>JUDGE: |

**App. 07**

JOEL KELTY, in his personal capacity,
608 6th Street N.E. Apt. T2
Washington, D.C. 20002,

and

JAY ADELSTEIN, in his personal capacity,
315 7th Street N.E.
Washington, DC 20002,

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Drane Flannery Restaurant, LLC, T/A The Big Board ("The Big Board") and Eric J. Flannery ("Flannery"), owner and operator of The Big Board, bring this civil action against Defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, and Jay Adelstein for damages and allege as follows:

## INTRODUCTION

1.      Since COVID-19 emerged in early 2020, District of Columbia ("District") Mayor Muriel Bowser (the "Mayor") issued more than a dozen emergency executive orders over a two-year period in response to the pandemic. These orders imposed and modified a variety of restrictions on people, schools, businesses, and government offices. These emergency orders were issued without review by the United States Congress and impacted all aspects of civic life during 2020 – 2022.

2.      In late 2021, the Mayor issued two emergency orders imposing an indoor mask requirement (including at bars and restaurants), Mayor's Order 2021-147, 68 D.C. Reg. 13954 (Dec. 20, 2021), and a proof of vaccination requirement, Mayor's Order 2021-148, 68 D.C. Reg. 14222 (Dec. 22, 2021). Both orders were issued for an initial 60-day period.

App. 08

3.      Mr. Flannery disagreed with the Mayor's orders and exercised his First Amendment rights by expressing his disapproval and disagreement on social media and elsewhere.

4.      The District Department of Health issued a summary suspension of The Big Board's license and shuttered the business in February 2022 for alleged violations of the Mayor's indoor mask and proof of vaccination requirements. Among other penalties, The Big Board paid a $100 restoration fee to obtain permission from the District Health Department to re-open following the Mayor's decision to lift the vaccination requirement effective February 15 and the indoor mask requirement effective March 1. Mayor's Order 2022-029, 69 D.C. Reg. 1376 (Feb. 14, 2022).

5.      During this general timeframe, Defendant Mark Eckenwiler denigrated and lambasted the Plaintiffs' openly stated views on social media and elsewhere.

6.      Subsequently, on or about October 21, 2022, Plaintiffs sought renewal of The Big Board's liquor license with the District Alcoholic Beverage Regulation Administration ("ABRA").

7.      ABRA renewed The Big Board's liquor license.

8.      Interested persons are permitted to protest such renewals for legitimate reasons.

9.      The Advisory Neighborhood Commission 6C (the "ANC 6C"), an official governmental body, voted to—and did—file a protest of The Big Board's liquor license renewal.

10.     Upon information and belief, Defendant Mark Eckenwiler, as the representative of ANC 6C, pushed the ANC 6C to vote for and file this protest.

11.     Upon information and belief, Defendant Drew Courtney pushed the ANC 6C to vote for and file this protest because of The Big Board's "bad behavior in recent years."

12.     Upon information and belief, all Defendants agreed to file the protest, not for a legitimate reason, but in direct response to the Plaintiffs' legally protected speech on the Mayor's shutdown orders.

**App. 09**

13.     Upon information and belief, the ANC 6C agreed to protest the liquor license to punish and harm Plaintiffs, without a valid basis, in retaliation for Plaintiffs' expressed views.

**PARTIES**

14.     Plaintiff The Big Board is a bar located in the District.

15.     Plaintiff Eric Flannery is a resident of the District and proprietor of Drane Flannery Restaurant, LLC, T/A The Big Board.

16.     Advisory Neighborhood Commissions are commissions established by the District Council pursuant to District law, and their members are elected by popular election. According to the District, "[a]lthough they are not required to follow the ANCs' advice, many District agencies are required to give the ANCs' recommendations 'great weight.' Moreover, District law says that agencies cannot take any action that will significantly affect a neighborhood unless they give the affected ANCs 30 days advance notice." *About ANCs*, Advisory Neighborhood Commissions, https://anc.dc.gov/page/about-ancs (last visited May 23, 2023).

17.     The ANC 6C is one of the Advisory Neighborhood Commissions established by the District Council and covers the geographic area where the Plaintiffs do business.

18.     Defendant Mark Eckenwiler is a resident of the District and, at all relevant times, was a commissioner of the ANC 6C. He is also the current chairman of the ANC 6C. Mr. Eckenwiler is being sued in his personal capacity.

19.     Defendant Karen Wirt is a resident of the District and, at all relevant times, was a commissioner of the ANC 6C. Ms. Wirt is being sued in her personal capacity.

20.     Defendant Christine Healey is a resident of the District and, at all relevant times was, a commissioner of the ANC 6C. Ms. Healey is being sued in her personal capacity.

21.     Defendant Drew Courtney is a resident of the District and, at all relevant times, was a commissioner of the ANC 6C. He is also the current chairman of the ANC 6C's Alcoholic

**App. 10**

Beverage Licensing Committee. Mr. Courtney is being sued in his personal capacity.

22.     Defendant Joel Kelty is a resident of the District and, at all relevant times, was a commissioner of the ANC 6C. Mr. Kelty is being sued in his personal capacity.

23.     Defendant Jay Adelstein is a resident of the District and, at all relevant times, was a commissioner of the ANC 6C. Mr. Adelstein is being sued in his personal capacity.

## VENUE AND JURISDICTION

24.     This Court has subject-matter jurisdiction over this case because it arises under the U.S. Constitution and laws of the United States. 28 U.S.C. § 1331. And because Plaintiffs bring this suit to vindicate the deprivation of "rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983, this Court also has jurisdiction to adjudicate Plaintiffs' claim under 28 U.S.C. § 1343 and to grant attorneys' fees under 42 U.S.C. § 1988.

25.     Pursuant to 28 U.S.C. § 1391, the U.S. District Court for the District of Columbia is the proper venue for this action because Defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, and Jay Adelstein are residents of the District, and a substantial part of the events giving rise to the claim occurred in the District.

## FACTS

26.     Beginning in March 2020, the Mayor began to issue rolling emergency orders related to COVID-19.

27.     Specifically relevant to this case, in late December 2021, the Mayor issued orders that required restaurants to impose the District's mask mandate and check customers' vaccination status beginning in mid-January 2022. *See, e.g.*, Mayor's Order 2021-147 (indoor mask requirement); Mayor's Order 2022-018 (extending "the indoor masking requirements set forth in Mayor's Order 2021-147").

**App. 11**

28.     Plaintiff Eric Flannery, at all relevant times, was and is the proprietor of The Big Board.

29.     The Big Board is a local tavern located in ANC 6C's territory in the District.

30.     Mr. Flannery disagreed with the District's decision to impose the mandates. He tweeted in January 2022, through The Big Board's Twitter account, that "everyone is welcome" at his tavern.

31.     In response, the District's government suspended The Big Board's operating and liquor licenses in February 2022, and forced the tavern to close—indefinitely.

32.     Following negotiations, the District and The Big Board entered into an offer to compromise, under which the District agreed to lift the suspension of The Big Board's business license. The District Alcoholic Beverage Control Board ("ABCB") accepted the offer to compromise and lifted the suspension of The Big Board's liquor license.

33.     Through all of this, Mr. Flannery continued to express his views opposing the mandates and the government's treatment of his restaurant by posting on Twitter and giving media interviews.

34.     Defendant Mark Eckenwiler showed his disdain for Mr. Flannery's expressed views and his animosity and animus towards Mr. Flannery through a series of attack tweets.

35.     Some examples of Defendant Eckenwiler's 2022 tweets include:

    a.  screenshots of two Big Board tweets with Eckenwiler's comment "When you've decided to flout the vaccine mandate taking effect on Jan. 15 at DC bars & restaurants, but don't quite have the stones to say so & instead resort to anti-vaxxer dog-whistling";

    b.  a screenshot of ACBC's notice of a meeting regarding The Big Board's liquor

6

**App. 12**

license with Eckenwiler's comment "Actions have consequences"; and

    c.   a picture of District Health Department's closure notice on The Big Board with Eckenwiler's comment "Play stupid games, win regulatory prizes!"

36.    On or about October 21, 2022, The Big Board requested a renewal of its liquor license.

37.    ABRA granted the renewal.

38.    ABRA allows interested parties to protest liquor licenses after they have been issued or renewed. ABRA may, if the protest is well taken, revoke an establishment's liquor license.

39.    During the relevant period, ANC held various meetings at which it discussed the liquor licenses issued to establishments within its geographic jurisdiction.

40.    Specifically, on November 7, 2022, ANC 6C's Alcoholic Beverage Licensing Committee held a meeting at which it discussed the liquor license of The Big Board. This meeting was open to the public, and Mr. Flannery attended this meeting.

41.    Upon information and belief, ANC 6C typically records most of its meetings and keeps meeting minutes of all of its meetings.

42.    The meeting was held via "Webex." The meeting notice stated "Webex stores all your recorded meetings either locally on your computer or on your Webex site. You can access your recordings and share or download them on your Webex site. If it's not your meeting, reach out to the host of your meeting to get the recording."

43.    At the November 7, 2022, meeting, Mr. Eckenwiler stated that The Big Board's license should be revoked because, "I mean just some of the things he's said publicly, we should go ahead and protest the license."

44.    None of the other committee members disagreed or challenged that statement.

**App. 13**

45.     The ANC 6C claims that no meeting notes or recordings exist for that November 7, 2022 meeting. So, if that meeting was recorded, as indicated in the Webex invitation, it was destroyed, i.e. spoliated.

46.     On November 9, 2022, The ANC 6C held another meeting.

47.     At that meeting, the ANC 6C commissioners discussed whether to protest The Big Board's liquor license.

48.     All Defendants then voted to protest The Big Board's liquor license renewal.

49.     On November 12, 2022, Mr. Eckenwiler, as the chairman and representative for the ANC 6C, led the ANC 6C in filing a protest against The Big Board's liquor license.

50.     Upon information and belief, the other voting members of the ANC 6C at the time were Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, Jay Adelstein, and Mark Eckenwiler.

51.     The written protest cited three grounds:

    a.  The Big Board's operations have had a negative effect "on real property values."

    b.  The Big Board has had a negative impact "on the peace, order, and quiet, including the noise and litter provisions set forth in Section 25-725 and 25-726 of the D.C. Code."

    c.  The Big Board has had a negative "effect upon the residential parking needs and vehicular and pedestrian safety."

52.     Mr. Eckenwiler was listed as the representative for the ANC 6C on the protest.

53.     None of these grounds were valid or had any basis in law or fact.

**App. 14**

54.     Upon information and belief, at the time that the ANC 6C voted for and filed the protest, every member of the commission knew that these grounds were false and had no basis in fact or law, but rather were a pretext for retaliation against Plaintiffs' protected expressions.

55.     Following the filing of the protest, Mr. Flannery attempted to discuss the matter with Mr. Eckenwiler to try to resolve the issues alleged in the protest.

56.     Mr. Eckenwiler refused to discuss the matter with Mr. Flannery, stating that he would only discuss it with The Big Board's attorney.

57.     Thereafter, The Big Board's attorneys asked the ANC 6C to withdraw its protest. Those communications occurred with Mr. Eckenwiler.

58.     Yet, Mr. Eckenwiler avoided all attempts by The Big Board's attorneys to negotiate the ANC's withdrawal of the protest.

59.     On Friday, January 27, 2023, The Big Board's attorney contacted Mr. Eckenwiler via email seeking to discuss the withdrawal of the protest and asked for Mr. Eckenwiler's phone number.

60.     On Tuesday, January 31, 2023, Mr. Eckenwiler responded that he was too busy but may have time the following week.

61.     On Tuesday, February 7, 2023, The Big Board's attorney again asked Mr. Eckenwiler for his phone number and to set up a time to discuss the protest. Mr. Eckenwiler did not respond.

62.     On Friday, February 10, 2023, The Big Board's attorney again attempted to contact Mr. Eckenwiler without success.

63.     On February 14, 2023, the day before a scheduled status conference regarding the protest—and three months after filing the protest—Mr. Eckenwiler provided, on behalf of the ANC

**App. 15**

6C, a proposed settlement agreement under which the ANC 6C would agree to withdraw its protest.

64.     In that same February 14, 2023 e-mail, Mr. Eckenwiler stated that "the status hearing doesn't really have any bearing on your review timing. We needn't move heaven & earth to reach an agreement by tomorrow."

65.     Mr. Eckenwiler's proposed settlement agreement did not address the alleged problems raised in the ANC 6C's protest. Rather, it demanded that The Big Board take actions inconsistent with its license.

66.     For example, Mr. Eckenwiler's proposal would have required The Big Board to close early, to provide food at all hours when it is open—thus converting it into a restaurant with a different license classification—prohibit live music, eliminate outdoor seating (for which The Big Board has separate permission from the District Department of Transportation), change food delivery times which would impede vendor deliveries, and more. None of these additional restrictions are required by District law, and all of them would impede the legitimate business operations of The Big Board and negatively affect its profitability.

67.     On February 26, 2023, The Big Board's attorney requested—in writing—that Mr. Eckenwiler provide any evidence supporting the three items listed in the ANC 6C's protest. *See supra* ¶51. The ANC 6C never provided any evidence.

68.     In that same February 26, 2023 email to the ANC 6C, The Big Board's attorney submitted a revised proposed settlement agreement to Mr. Eckenwiler, explaining in detail that the proposal did not address the items listed in the protest and was inconsistent with The Big Board's liquor license.

69.     The revised proposed settlement agreement provided changes to bring the agreement into line with District law and provided detailed explanations for why the proposed

**App. 16**

changes were made.

70.     Neither Mr. Eckenwiler nor anyone else from the ANC 6C responded to The Big Board's revised proposed settlement agreement.

71.     At that time—and still true today—The Big Board's attorneys had not received any of the required evidentiary documents from Mr. Eckenwiler or anyone else representing the ANC 6C.

72.     As required by District law, ABRA's mediator scheduled a mandatory mediation for March 7, 2023.

73.     Mr. Eckenwiler appeared at the mediation on behalf of the ANC 6C.

74.     At the mediation, Mr. Eckenwiler stated that he had sent a proposed settlement agreement to The Big Board's attorney, who had responded with proposed changes. Mr. Eckenwiler then stated that the parties were far apart.

75.     At the mediation, Mr. Eckenwiler stated that he had attended the call "as required" and was now "bowing out" and then hung up. He spoke for less than 45 seconds and hung up without so much as waiting for a response from the mediator.

76.     This was not a good faith effort to participate in the mediation required by the ABRA.

77.     In February 2023, ABRA had conducted an independent investigation into the claims in the ANC 6C's protest. It found nothing to support the claims in the protest.

78.     Specifically, "ABRA investigators monitored The Big Board on eight (8) separate occasions from February 16, 2023, until February 28, 2023. No ABRA violations were observed during these visits," including, "[n]o [p]eace, order and quiet issues, no loitering, no trash or parking concerns." "During these monitoring efforts, [ABRA] did not observe issues with

**App. 17**

vehicular and pedestrian safety, in the vicinity of The Big Board. No pedestrians were observed

exiting The Big Board in an intoxicated state That [sic] would have caused issues for other innocent

by standers or vehicular traffic, on H Street, N.E." ABRA Protest Report, Ex.

79.    Following Mr. Eckenwiler's refusal to actively participate in the mediation and an

independent investigation by ABRA—which found no substance to the issues claimed in the

protest—the ANC 6C voluntarily withdrew its protest on or about March 8, 2023.

80.    Plaintiffs incurred over $20.00 in damages, including attorneys' fees incurred

defending against Defendants' retaliatory liquor license protest.

## CLAIMS FOR RELIEF

## COUNT ONE: FIRST AMENDMENT RETALIATION CLAIM UNDER SECTION 1983

### THE COURT SHOULD FIND THAT DEFENDANT RETALIATED AGAINST PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT. (U.S. Const. amend. I; 42 U.S.C. § 1983)

81.    Plaintiff restates the foregoing allegations and incorporates them here as if fully

rewritten.

82.    Pursuant to 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * * .

83.    The First Amendment to the U.S. Constitution prohibits government officials from

retaliating against an individual because of that individual's exercise of his First Amendment

rights. *Doe* v. *D.C.*, 796 F.3d 96, 106 (D.C. Cir. 2015).

84.    Mr. Flannery invoked his First Amendment rights in expressing his disagreement

with the District's COVID policies by posting on Twitter, giving media interviews, refusing to

**App. 18**

obey orders he understood to be unlawful, and filing a lawsuit challenging the constitutionality of such orders.

85.     To retaliate against Mr. Flannery for his First Amendment-protected expressions of disagreement with the District's COVID policies, Mr. Eckenwiler—while holding an official position as commissioner and representative of ANC 6C—posted disparaging comments about The Big Board on Twitter. Additionally, Defendants—through their official positions as commissioners and of the ANC 6C—filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal.

86.     Because of Defendants' actions, Mr. Flannery suffered damages to his, and his tavern's, reputation, emotional distress, the expense of defending against the frivolous protest of his liquor license, and a violation of his First Amendment rights.

87.     The ANC 6C possesses statutory authority—giving it preferential treatment with ABRA to protest liquor licenses. This statutory authority, and the actual use of it for retaliatory purposes, deter an ordinary person from speaking.

88.     But for Mr. Flannery's speech and expressive conduct, Mr. Eckenwiler would not have attacked The Big Board online and Defendants would not have filed and/or maintained the protest against The Big Board's liquor license.

89.     Mr. Eckenwiler's attack tweets specifically citing Mr. Flannery's speech demonstrate that his actions were designed to retaliate against the Plaintiffs. Further, Mr. Eckenwiler's statement at the November 7, 2022, ANC meeting that "I mean just some of the things he's said publicly, we should go ahead and protest the license" demonstrates that Mr. Eckenwiler explicitly and successfully advocated that the ANC 6C take adverse action against Mr. Flannery because of his constitutionally protected speech. All Defendants' subsequent vote to

**App. 19**

protest The Big Board's liquor license renewal confirms this improper motivation for the protest. Further, ABRA's failure to find any substance to the ANC 6C's protest shows that the protest was frivolous, filed in bad faith with no legitimate purpose, and maliciously prosecuted against Mr. Flannery because of his protected speech.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

A.  A finding that Defendants' conduct violated Plaintiffs' First Amendment rights;

B.  An award of any damages suffered by Plaintiffs, including but not limited to attorneys' fees expended in defending against the ANC 6C's liquor license protest, in an amount in excess of $20.00;

C.  An award of punitive damages;

D.  An award of reasonable costs, including but not limited to, attorneys' fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and as otherwise provided by law; and

E.  Any further relief to which Plaintiffs are entitled or which the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues pursuant to Federal Rule of Civil Procedure 38(b).

**App. 20**

Respectfully submitted,

Dated: September 25, 2023

Robert Alt* (OH Bar # 0091753)
David C. Tryon* (OH Bar #0028954)
Jay R. Carson* (OH Bar #0068526)
Alex M. Certo* (OH Bar # 0102790)
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
Email: d.tryon@buckeyeinstitute.org

  /s/ *David L. Rosenthal*

Patrick Strawbridge*
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

David L. Rosenthal (D.C. Bar ID 1660535)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
david@consovoymccarthy.com

*pro hac vice* motion forthcoming

*Attorneys for Plaintiffs*

**App. 21**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ERIC J. FLANNERY,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:23-cv-02804-ABJ** |
| **MARK ECKENWILER,** *et al.*, | |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, and Jay Adelstein move to dismiss Plaintiffs' Complaint.  Plaintiffs contend that Defendants, in their capacities as elected Commissioners of the 6C Advisory Neighborhood Commission (ANC), violated Plaintiffs' First Amendment rights by voting to protest the renewal of The Big Board's liquor license to the District of Columbia Alcoholic Beverage Control Board in retaliation for Plaintiffs' social media posts and public interviews criticizing the Mayor's COVID-19 restrictions.  However, Plaintiffs fail to plausibly allege any retaliatory action or any causal connection between Plaintiffs' purported protected First Amendment activity and the ANC's protest months later.  And, regardless, all Defendants are entitled to qualified immunity. Therefore, this Court should dismiss the Complaint.

Date: November 27, 2023.                    Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

**App. 22**

*/s/ Matthew R. Blecher*

MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*

HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Helen M. Rave*

MARCUS D. IRELAND [90005124]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, N.W. Suite 10100
Washington, D.C. 20001
Phone: (202) 735-7520
Email: helen.rave@dc.gov

*Counsel for Defendants*

2

**App. 23**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **ERIC J. FLANNERY,** *et al.***,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:23-cv-02804-ABJ** |
| **MARK ECKENWILER,** *et al.***,** | |
| **Defendants.** | |

---

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**</u>

Plaintiffs bring this case against six current and former Advisory Neighborhood

Commissioners—Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty,

and Jay Adelstein—for their vote to protest the renewal of Plaintiff The Big Board's liquor

license.  Plaintiffs contend that this protest, and personal tweets and statements by Defendant

Eckenwiler, were made in retaliation for Plaintiffs' social media posts criticizing the District's

COVID-19 restrictions.  However, Plaintiffs concede that these actions were taken in part due to

Plaintiffs' refusal to comply with mayoral orders, conduct that is not protected by the First

Amendment, and in the event of the protest, nearly a year after Plaintiffs' social media posts.

Further, neither tweets criticizing Plaintiffs' conduct nor a protest of a license renewal rise to the

level of a retaliatory action likely to deter an individual of ordinary firmness from engaging in

protected conduct.  Moreover, Plaintiffs have not plausibly alleged that any actions were taken

with a retaliatory motive.  Lastly, even if Plaintiffs had stated a claim, all Defendants are entitled

to qualified immunity.

**App. 24**

## BACKGROUND

I.    **The Advisory Neighborhood Commissions and the Alcoholic Beverage License Renewal Process**

Congress provided for the creation of Advisory Neighborhood Commissions (ANCs),

then called Advisory Neighborhood Councils, as part of the Home Rule Act.  Pub. L. No.

93-198, 87 Stat. 774 (1973) (codified as amended at D.C. Code § 1-201.01 *et seq.*).  ANCs are

non-partisan, neighborhood bodies made up of locally elected representatives.  *See* D.C. Code §

1-207.38.  Elected ANC Commissioners serve for two-year terms and are unpaid.  *Id.* § 1-

309.06; *see* About ANCs, Advisory Neighborhood Commissions, https://anc.dc.gov/page/about-

ancs (last accessed Nov. 27, 2023).  The role of ANCs is to "advise the Council of the District of

Columbia, the Mayor and each executive agency, and all independent agencies, boards and

commissions of the government of the District of Columbia with respect to all proposed matters

of District government policy including, but not limited to, decisions regarding planning, streets,

recreation, social services programs, education, health, safety, budget, and sanitation which

affect that Commission area."  D.C. Code § 1-309.10(a).  "The issues and concerns raised in the

recommendations of the Commission shall be given great weight during the deliberations of the

government entity."  *Id.* § 1-309.10(d)(3)(A).

At the time relevant to this case, the Alcoholic Beverage Control Board (Board) was

charged with receiving and evaluating applications for the renewal of licenses.  D.C. Code § 25-

201 (2022).[1]  The Board was assisted by an independent agency, the Alcoholic Beverage

Regulation Administration (ABRA).  *Id.* § 25-202.  When an establishment seeks renewal of its

---

[1]    In 2023, as part of the Medical Cannabis Amendment Act of 2022, the Alcoholic Beverage Control Board became the Alcoholic Beverage and Cannabis Board.  70 D.C. Reg. 1582 (Feb. 3, 2023).

2

**App. 25**

liquor license, the Board is required to notify any ANC within 600 feet of where the establishment is or will be located. D.C. Code § 25-421. ANCs have standing to protest the renewal of a license related to alcoholic beverages in or near the area they represent. *Id.* § 25-601. If the Board receives a protest during the protest period, the Board schedules a protest hearing, notifies the parties about mediation, and informs the parties about settlement agreements. *Id.* § 25-432. An applicant and a protestant can negotiate a settlement and enter into a written settlement agreement. *Id.* § 25-446. If the Board determines that the settlement agreement complies with all applicable laws and regulations, the Board shall approve the license application, conditioned upon the licensee's compliance with the terms of the settlement agreement. *Id.* § 25-446(c). Approved settlement agreements are available online and many District establishments have entered into such agreements. *See* Settlement Agreements, Alcoholic Beverage and Cannabis Administration, https://abca.dc.gov/page/settlement-agreements#gsc.tab=0 (last accessed Nov. 15, 2023).[2]

Throughout 2022, Defendants Mark Eckenwiler, Joel Kelty, Jay Adelstein, Drew Courtney, Karen Wirt, and Christine Healey were the elected Commissioners for ANC 6C. Compl. ¶¶ 18–23.[3] ANC 6C has a standing Alcoholic Beverage Licensing Committee that includes both Commissioners and private individuals. *See* Ex. 1, November 2022 ANC 6C Meeting Minutes, at 2. In 2022, the ANC 6C Alcoholic Beverage Licensing Committee was chaired by a private individual, not one of the Commissioners. *See id.* Throughout 2022, ANC

---

[2]      "[J]udicial notice may be taken of public records and government documents available from reliable sources." *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016).

[3]      Defendants Wirt, Courtney, and Healey ended their terms as ANC Commissioners at the end of the 2022 term. *See* January 2023 ANC 6C Meeting Minutes, available at https://anc6c.org/wp-content/uploads/2023/02/ANC_Minutes_11Jan23-FINAL.pdf.

**App. 26**

6C voted to protest the license renewals and new license applications of multiple establishments, including that of Plaintiff The Big Board.  *See* June 2022 ANC 6C Meeting Minutes (Commissioners voted to protest one license renewal and one new license application); July 2022 ANC 6C Meeting Minutes (Commissioners voted to protest one renewal application and two new license applications); October 2022 ANC 6C Meeting Minutes (Commissioners voted to protest two applications); Ex. 1 at 3 (Commissioners voted to protest three license renewal applications).[4]

## II.   **Plaintiffs' Allegations**

In order to address a surge in COVID-19 cases in the District in late 2021, the Mayor issued orders reinstating the District's indoor mask mandate, 68 D.C. Reg. 13954, and requiring certain establishments, including restaurants and bars, to implement a vaccination entry requirement, 68 D.C. Reg. 14222.  Plaintiff Flannery publicly disagreed with these orders, including posting his views on social media, and "refus[ed] to obey orders he understood to be unlawful[.]"  Compl. ¶¶ 30, 84.

On February 1, 2022, the District of Columbia Department of Health (DC Health) issued a notice of infraction to The Big Board, citing it for one violation of the mask requirement and one violation of the proof-of-vaccination requirement, and suspending The Big Board's restaurant license.  *See Flannery v. District of Columbia Department of Health*, Case No. 1:22-cv-03208, ECF Nos. 1, 1-1 (filed Oct. 13, 2022).[5]  On February 7, 2022, DC Health issued a

---

[4]     ANC 6C meeting agendas and minutes are publicly available at https://anc6c.org/anc6c/.

[5]     Plaintiffs have also brought a lawsuit challenging the suspension of their license, currently pending before this Court.  The Court may take judicial notice of the docket and public filings therein.  *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017).

**App. 27**

second notice of infraction against The Big Board, citing it for another violation of the mask

mandate and another violation of the proof-of-vaccination requirement.  *See id.* ECF Nos. 1, 1-2.

On or around October 21, 2022, Plaintiffs sought renewal of The Big Board's liquor

Shortly thereafter, in response to declining COVID-19 cases, the Mayor issued an order

declaring that the proof-of-vaccination requirement would expire on February 15, 2022, and the

mask requirement would expire on March 1, 2022.  69 D.C. Reg. 1376.  On March 10, 2022,

after The Big Board paid a restoration fee, DC Health advised The Big Board that it was cleared

to reopen.  *See Flannery*, Case No. 1:22-cv-03208, ECF Nos. 1, 1-3; *see also* Compl. ¶ 32.

Plaintiffs allege that, during this general timeframe, Defendant Mark Eckenwiler criticized

"Plaintiffs' openly stated views on social media and elsewhere."  Compl. ¶ 5.

On or around October 21, 2022, Plaintiffs sought renewal of The Big Board's liquor

license.  Compl. ¶ 36.  ABRA granted the renewal.  *Id.* ¶ 37.  On November 7, 2022, ANC 6C's

Alcoholic Beverage Licensing Committee held a meeting where it reviewed nine liquor renewal

applications.  *Id.* ¶ 40; Ex. 1 at 2–3.  The Committee recommended taking no action on six of the

renewal applications and recommended opposing, or protesting, three applications, including

The Big Board's, on three separate grounds—negative effects on surrounding properties,

negative effects on traffic, and negative effects on the peace, order, and quiet of neighborhoods.

*Id.* at 3; *see also* D.C. Code § 25-313(b) (listing the grounds for ABRA Board to determine

appropriateness); 23 DCMR § 1602.2 (requiring protests to be in writing and state the basis for

the objection under appropriateness standards established by D.C. Code §§ 25-313, -314, -400).

Plaintiffs allege that Defendant Eckenwiler made a comment during the Committee meeting that

The Big Board's license should be "revoked" because of "some of the things [Plaintiff Flannery]

said publicly."  Compl. ¶ 43.

**App. 28**

On November 9, 2022, ANC 6C held an ANC 6C Commission meeting.  Ex. 1.  During that meeting, the Commissioners voted unanimously to adopt the Alcoholic Beverage Licensing Committee's recommendation and oppose the three applications, including The Big Board's.  *Id.* at 3.  Plaintiffs allege that Defendant Eckenwiler subsequently led the ANC 6C in filing a protest against The Big Board's liquor license.  Compl. ¶ 49.  Plaintiffs allege that Defendant Eckenwiler provided a proposed settlement agreement and that counsel for The Big Board made a counter proposal for a settlement agreement.  *Id*. ¶¶ 63, 68.  Plaintiffs allege that ABRA monitored The Big Board on several occasions in late February 2023 and did not observe any ABRA violations.  *Id.* ¶ 78.  ANC 6C voluntarily withdrew its protest on or about March 8, 2023.  *Id.* ¶ 79.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Courts need not accept a plaintiff's conclusory allegations and legal conclusions as true.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

## ARGUMENT

### I.   Plaintiffs Fail To Allege Retaliation in Violation of the First Amendment

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 2019) (citation omitted).  To state a claim for retaliation against First Amendment activities, a plaintiff must plausibly allege "(1) that he engaged in protected conduct, (2) that the government

**App. 29**

'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). Plaintiffs allege that Defendant Eckenwiler retaliated against them by "posting disparaging comments about The Big Board on Twitter" and that Defendants "filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal." Compl. ¶ 85. Neither allegation plausibly states a claim for retaliation.

### A.  <u>Plaintiffs Fail To State a Claim Based on Defendant Eckenwiler's Tweets.</u>

Plaintiffs allege that Commissioner Eckenwiler "posted disparaging comments about The Big Board on Twitter" "while holding an official position as commissioner" in retaliation for Mr. Flannery's social media posts critical of the mayor's COVID-19 orders. Compl. ¶ 85. But Plaintiffs do not allege that these tweets were made in any official capacity, only that Defendant Eckenwiler was an ANC Commissioner at the time he purportedly posted these comments. *See id.* This is insufficient to state a First Amendment claim; simply being an elected official does not render all comments state action. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right . . . to speak as a citizen addressing matters of public concern."); *see also Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973) (plurality opinion) ("That 'Congress shall make no law . . . abridging the freedom of speech, or of the press' is a restraint on government action, not that of private persons." (citation omitted)). And Section 1983 only authorizes a cause of action against persons who act "under color of" law. 42 U.S.C. § 1983. Simply put, Plaintiffs have not alleged any basis to suggest that Defendant Eckenwiler was

**App. 30**

engaged in government activity—rather than speaking as a citizen on a matter of public

concern—when he tweeted about The Big Board.  *See West v. Atkins*, 487 U.S. 42, 49 (1988)

("The traditional definition of acting under color of state law requires that the defendant in a

§ 1983 action have exercised power 'possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law.'" (citation omitted)).[6]

  Regardless, Commissioner Eckenwiler's purported tweets are directed at Plaintiffs'

decision not to abide by the Mayor's orders, not Plaintiffs' speech or expressive conduct.  *See*

Compl. ¶ 35(a) (describing Plaintiffs' flouting the vaccine mandate); *id.* ¶ 35(b) (quoting

Commissioner Eckenwiler's comment as "*Actions* have consequences" (emphasis added)

(internal quotation marks omitted)); *id.* ¶ 35(c) (quoting Commissioner Eckenwiler's tweet

related to DC Health's closure of The Big Board because of multiple violations of the Mayor's

orders as "Play stupid games, win regulatory prizes!" (internal quotation marks omitted)).

Plaintiffs' failure to enforce the mask mandate and vaccination requirement is not protected by

the First Amendment.  The First Amendment protects only "inherently expressive conduct."

*Rumsfeld v. Forum for Academic & Institutional Rights*, 547 U.S. 47, 66 (2006).  Courts have

repeatedly rejected the argument that an individual is engaging in expressive conduct by not

wearing a mask.  *See Stewart v. Justice*, 518 F. Supp. 3d 911, 919 (S.D. W.Va. 2021) ("the act of

failing to wear a mask is not sufficiently expressive because there are several non-political

reasons why one may not be wearing a mask at a given moment); *Murray-Nolan v. Rubin*, Case

No. 22-801, 2022 U.S. Dist. LEXIS 162043 at *28–29 (D.N.J. Sept. 8, 2022), *appeal filed* Sept.

15, 2022 (collecting cases).  A business's failure to check vaccination status or enforce a mask

---

[6] The issue of state action in the context of social media activity is currently before the
Supreme Court.  *See Garnier v. O'Connor-Ratcliff*, No. 22-324, 598 U.S. -- (Apr. 24, 2023);
*Lindke v. Freed*, No. 22-611, 598 U.S. -- (Apr. 24, 2023).

**App. 31**

mandate is similarly not inherently expressive; there could be a number of non-political reasons not to comply with these orders.  And Plaintiff Flannery's comments do not turn Plaintiffs' refusal to enforce these requirements into protected speech; "[i]f combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Rumsfeld*, 547 U.S. at 66.  Because Defendant Eckenwiler's purported comments concern conduct that is not protected by the First Amendment, the First Amendment is not implicated.

Additionally, Defendant Eckenwiler's alleged comments, even if they had been made in his official capacity (they were not) would not constitute an adverse action.  Adverse action is evaluated on an objective test:  "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'"  *See Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002).  Criticism by an elected ANC Commissioner does not rise to this level. Disagreement and political debate are an inherent and protected aspect of the marketplace of ideas.  *See Block v. Meese*, 793 F.2d 1303, 1313 (D.C. Cir. 1986) (Scalia, J.) ("Nor does any case suggest that 'uninhibited, robust, and wide-open debate' consists of debate from which the government is excluded, or an 'uninhibited marketplace of ideas' one in which the government's wares cannot be advertised"); *see also Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas . . . rather than to countenance monopolization of that market . . . ."); *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) ("[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" (internal quotation marks and citations omitted)).  Thus, Plaintiffs

**App. 32**

have failed to plausibly allege that Defendant Eckenwiler's purported tweets violated their First Amendment rights.

**B.** **Plaintiffs Fail To State a Claim Based on Defendants' Vote To Protest the Renewal of The Big Board's Liquor License.**

Plaintiffs contend that the vote to protest the renewal of The Big Board's liquor license was taken in retaliation for Plaintiff Flannery's protected First Amendment expression, specifically, his social media posts critical of the Mayor's COVID-19 restrictions. Compl. ¶ 85. However, Plaintiffs have failed to state a claim for two reasons: (1) the protest was not an adverse action sufficient to state a claim for First Amendment retaliation; and (2) Plaintiffs have failed to plausibly allege that retaliation against their protected speech was the but-for cause of any adverse action.

**1.** **Plaintiffs Allege No Adverse Action Sufficient To State a Claim Under the First Amendment.**

Plaintiffs contend that Defendants retaliated against them by "fil[ing] and prosecut[ing] a frivolous protest challenging The Big Board's renewal license." Compl. ¶ 85. But ANC 6C's protest of The Big Board's liquor license is not an adverse action sufficient to "likely . . . deter a person of ordinary firmness from . . . exercise" of their First Amendment rights. *Toolasprashad*, 286 F.3d at 585 (internal quotation omitted). District law allows affected ANCs, as well as abutting property owners, groups of more than five residents or property owners, and eligible citizens associations, to protest the renewal of a license. D.C. Code § 25-601. If an ANC protests, the Board shall give great weight to its recommendations, but the Board is not required to follow the ANC's recommendation, *see id.* § 25-609; Compl. ¶ 38. If a protest is filed, the Board will schedule a protest hearing, D.C. Code § 25-432, and then the Board makes the ultimate determination about whether a license should be renewed, *id.* § 25-433. Protests of

liquor licenses can be brought by impacted citizens, or ANCs on their behalf, and occur in the regular course of business.  *See supra* Background.

Here, Plaintiffs allege that ANC 6C protested the renewal of The Big Board's liquor license, then subsequently proposed a settlement agreement to The Big Board, and ultimately withdrew their protest after ABRA investigators monitored The Big Board and observed no violations.  Compl. ¶¶ 51, 65, 79.  Throughout the renewal process and resolution of the protest, Plaintiffs' license was never suspended, and The Big Board was never prevented from operating. A protest, which serves to notify the decisionmaker of concerns and start a process for a hearing, does not prevent ongoing business and would not deter an individual of ordinary firmness from speech and expressive conduct.  *Cf. Rocky Mt. Rouges, Inc. v. Town of Alpine*, 375 Fed. App'x 887, 897 (10th Cir. 2010) (finding that purported delay in the liquor licensor renewal process based on investigation into citizens' concerns, "which never resulted in the Bull Moose even temporarily losing its license, could not have caused an injury that would have led a person of ordinary firmness to discontinue providing the entertainment offered at the Bull Moose").

Plaintiffs also contend that ANC 6C "prosecuted" the protest against them.  Compl. ¶ 85. Plaintiffs seemingly refer to Defendant Eckenwiler providing a proposed settlement agreement on behalf of ANC 6C and appearing at a mediation session.  *Id.* ¶¶ 63, 73.  But as noted above, ANC 6C ultimately voluntarily withdrew its protest.  *Id.* ¶ 79.  Plaintiffs have not specifically identified what alleged action, other than the vote to protest itself, would have been an adverse action.  Accordingly, any First Amendment claim concerning the Defendants' purported prosecution of the protest should be dismissed.  And, regardless, any such claims should be dismissed against Defendants Wirt, Healey, and Courtney because they were not in office in 2023 during any purported prosecution.

**App. 34**

### 2.        Plaintiffs Have Not Plausibly Alleged a Causal Link Between Any Protected Conduct and ANC 6C's Protest.

Plaintiffs have not plausibly alleged that Plaintiffs' protected conduct is the but-for cause of ANC 6C's decision to protest the renewal of Plaintiffs' liquor license. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Nieves*, 139 S. Ct. at 1722. The motive must be the "but-for" cause of the injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* As an initial matter, Plaintiffs allege that the purportedly retaliatory actions—Defendant Eckenwiler's tweets and the ANC 6C vote to protest the liquor license renewal—were taken in part based on Plaintiffs' "refus[al] to obey orders [Plaintiffs] understood to be unlawful." Compl. ¶¶ 84–85. As discussed above, Plaintiffs' refusal to comply with the Mayor's orders to enforce a mask mandate and a vaccination entry requirement is not expressive conduct protected by the First Amendment. *See supra* Section I.A. Further, Plaintiffs' allegation that "Defendant Drew Courtney pushed the ANC 6C to vote for and file this protest because of The Big Board's 'bad *behavior* in recent years,'" Compl. ¶ 11 (emphasis added), undermines any claim that Defendants took action solely because of Plaintiffs' purported protected speech. Even accepting Plaintiffs' allegation as true, Plaintiffs' expressive conduct is not the but-for cause of Defendants' alleged action, and Plaintiffs' claim of First Amendment retaliation is subject to dismissal on this basis alone.

Regardless, Plaintiffs have failed to plausibly allege that Defendants had a retaliatory motive for their vote to protest The Big Board's liquor license renewal. Plaintiffs allege that "[b]ut for Mr. Flannery's speech and expressive conduct, . . . Defendants would not have filed and/or maintained the protest against The Big Board's liquor license." Compl. ¶ 88. But such a conclusion is a threadbare recitation of the elements for First Amendment retaliation, and that is

**App. 35**

not enough to state a claim.  *See Iqbal*, 556 at 678.  Plaintiffs allege that the purported protected

activity occurred in January 2022.  *See* Compl. ¶ 30.  The vote at issue took place more than nine

months later, in November 2022.  Compl. ¶¶ 46–48.  The significant gap in time between

Plaintiffs' speech and the vote to protest does not give rise to an inference of causality.  *See*

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (citing cases

finding a three-month period and a four-month period too long in retaliation claims based on

temporal proximity between protected activity and adverse action and finding that longer

"suggests, by itself, no causality at all"); *see also Scahill v. District of Columbia*, 271 F. Supp. 3d

216, 235–36 (D.D.C. 2017) ("To the extent that plaintiffs argue that the Board took retaliatory

action against HRH in October 2016 for HRH's May 2016 motion for reconsideration, these

events, standing alone, are too distant in time to raise a plausible inference of retaliation.").

 Moreover, Plaintiffs have failed to allege any basis for their conclusory statement that

"every member of the commission knew that [the protest grounds] were false and had no basis in

law or fact, but rather were a pretext for retaliation."  Compl. ¶ 54.  Plaintiffs point to purported

comments made by Defendant Eckenwiler on Twitter and at an ANC 6C Alcoholic Beverage

Committee meeting, the vote to protest the license renewal, and the fact that subsequent

observation by ABRA investigators did not find any violations as evidence that the vote was

retaliatory, *id.* ¶ 89, but this falls far short.  Plaintiffs have not even alleged that Defendants Wirt,

Kelty, Adelstein, Healey, or Courtney were aware of any purported statements by Defendant

Eckenwiler concerning The Big Board.  And Plaintiffs do not allege that any Defendant other

than Defendant Eckenwiler was present at the Alcoholic Beverage and Licensing Committee

meeting when one purported statement was made.  A bare allegation that these Commissioners

'knew' that this protest was pretextual is insufficient to state a claim against any of them.  *See*

**App. 36**

*Iqbal*, 556 U.S. at 678.  At a minimum, Plaintiffs' Complaint against Defendants Wirt, Kelty, Adelstein, Healey, and Courtney should be dismissed on this basis.

Nor have Plaintiffs plausibly alleged that retaliation was Defendant Eckenwiler's but-for motivation for voting for the protest, or that Defendant Eckenwiler was the deciding vote. Plaintiffs cite to one purported comment from Defendant Eckenwiler at a meeting of the dedicated ANC 6C Alcoholic Beverage and Licensing Committee, but Plaintiffs do not allege that this comment was the basis of the recommendation by the Committee, which was chaired at the time by a private individual, to protest the renewal license.  *See* Ex. 1 at 2.  ANC 6C adopted the recommendations of the ANC 6C Alcoholic Beverage and Licensing Committee on all the license renewals before it at the Commission meeting in question, including recommendations to protest two other license renewal applications in addition to The Big Board's.  *Id.* at 2–3.  The fact that Defendants voted to follow the recommendations of the ANC 6C Alcoholic Beverage and Licensing Committee across the board also cuts against any inference that there was a retaliatory motive for ANC 6C's vote on The Big Board's license alone.

Plaintiffs seemingly suggest that it is reasonable to infer that the protest was pretextual because of terms in the proposed settlement agreement and that the ABRA investigators did not see evidence of infractions in their inspections after the protest was filed.  *See* Compl. ¶¶ 65, 89. Plaintiffs contend that the "proposed settlement agreement did not address the alleged problems raised in the ANC 6C's protest."  *Id.* ¶ 65.  But Plaintiffs' factual allegations do not support this inference:  the proposed settlement allegedly contained terms that would have required The Big Board to close early, provide food at all hours when it is open, prohibit live music, eliminate outdoor seating, and change food delivery times.  *Id.* ¶ 66.  Plaintiffs contend, without further explanation, that these proposed changes would not address the purported grounds of the

**App. 37**

protest—negative effect on real property values, negative impact on the peace, order, and quiet, including noise and litter provisions, and negative effect upon residential parking needs and vehicular and pedestrian safety.  *Id.* ¶ 51.  But there are clear connections between the items in the proposed settlement agreement and these grounds; for example, live music on the premises would impact noise in the neighborhood and outdoor seating and food delivery times relate on their face to residential and pedestrian safety.

Finally, Plaintiffs contend that "ABRA's failure to find any substance to the ANC 6C's protest shows that the protest was frivolous, filed in bad faith with no legitimate purpose, and maliciously prosecuted against Mr. Flannery because of his protected speech."  Compl. ¶ 89. But again, Plaintiffs' factual allegations do not reasonably give rise to such an inference. Plaintiffs allege that the protest was filed on November 12, 2022, and then ABRA investigators monitored The Big Board on eight occasions between February 16, 2023, and February 28, 2023, and observed no ABRA violations.  *Id.* ¶¶ 49, 78.  Even assuming the truth of these allegations— that ABRA investigators observed no violations when it observed The Big Board three months after the protest, when quite possibly The Big Board was on its best behavior—this does not give rise to a reasonable inference that ANC 6C's protest in November was pretextual.  Plaintiffs have failed to plausibly allege that a retaliatory motive was the but-for cause of any actions taken by any Defendants, and this claim should be dismissed.

## II.     Defendants Are Entitled to Qualified Immunity.

Even if Plaintiffs had plausibly alleged a retaliation claim—they have not—Defendants are entitled to qualified immunity.  The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 233, 231 (2009).  The Supreme Court has "repeatedly stressed the

**App. 38**

importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).  "'Clearly established' means that, at the time of the [official's] conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "[E]xisting law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft*, 563 U.S. at 741).

As discussed above, it is not clearly established that Plaintiffs' actions—refusing to comply with the Mayor's orders directing a mask mandate and vaccination entry requirements— are expressive conduct protected by the First Amendment.  *Cf. Stewart*, 518 F. Supp. 3d at 919; *Murray-Nolan*, 2022 U.S. Dist. LEXIS 162043, at *28–29.  As such, even if this Court were to determine that such conduct is covered by the First Amendment, Defendants were not on notice that such conduct would be protected by the First Amendment in 2022 and are entitled to qualified immunity for any actions purportedly taken in response to Plaintiffs' "refus[al] to obey orders [Plaintiffs] understood to be unlawful."  Compl. ¶ 85.

With respect to Defendant Eckenwiler's alleged tweets, it is not clearly established that the alleged activity on his personal social media account would constitute state action.  As noted above, similar questions are currently before the Supreme Court.  *See supra* n. 6.  Nor is it clearly established that criticism alone is an adverse action for purposes of establishing a First Amendment claim.  *Cf. X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70 (2d Cir. 1999) (discussing that the First Amendment "protect[s] the legislator's right to state publicly his criticism of the granting of such a contract to a given entity and to urge to the administrators that such an award would contravene public policy.").

**App. 39**

And with respect to ANC 6C's protest of the license renewal, all Defendants are entitled to qualified immunity.  It is not clearly established that Defendants' protest of The Big Board's liquor license renewal, which never resulted in any suspension of the license or impacted regular operation of The Big Board, would rise to the level of retaliatory action necessary for purposes of a First Amendment violation.  *Cf. Rocky Mt. Rouges, Inc*., 375 Fed. App'x at 897.  In a recent case in this district, the Court found that a police officer was entitled to qualified immunity for filing a retaliatory bar complaint because it was not clearly established that the retaliatory filing of such a complaint was a First Amendment violation in April 2020.  *Fishman v. District of Columbia*, Case No. 21-1847, 2023 U.S. Dist. LEXIS 18028, at *24 (D.D.C. Feb. 2, 2023).  As part of that analysis, the Court noted that the plaintiff did not cite any cases establishing that a retaliatory bar complaint would violate the First Amendment and noted that plaintiff had not cited any "Supreme Court or D.C. Circuit cases for even the more general proposition that such bad-faith complaints violate a clearly established right in the first instance." *Id.*  The same analysis would apply here.  To the extent Plaintiffs' theory is that Defendants' protest instituted a review of their license by ABRA, the Ninth Circuit recently held that it was not clearly established that a retaliatory investigation alone could be a First Amendment violation.  *Moore v. Garnand*, Case No. 22-16236, 2023 U.S. App. LEXIS 25829, at *19 (9th Cir. Sept. 29, 2023).  Defendants are entitled to qualified immunity on the protest of the license renewal of The Big Board as it was not clearly established that a protest, which starts a process for the Board to consider concerns raised, could rise to the level of an adverse action under a First Amendment analysis.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

**App. 40**

Date: November 27, 2023.                    Respectfully submitted,

                                            BRIAN L. SCHWALB
                                            Attorney General for the District of Columbia

                                            STEPHANIE E. LITOS
                                            Deputy Attorney General
                                            Civil Litigation Division

                                            */s/ Matthew R. Blecher*
                                            ─────────────────────────────
                                            MATTHEW R. BLECHER [1012957]
                                            Chief, Civil Litigation Division, Equity Section

                                            */s/ Honey Morton*
                                            ─────────────────────────────
                                            HONEY MORTON [1019878]
                                            Assistant Chief, Equity Section

                                            */s/ Helen M. Rave*
                                            ─────────────────────────────
                                            MARCUS D. IRELAND [90005124]
                                            HELEN M. RAVE [90003876]
                                            Assistant Attorneys General
                                            Civil Litigation Division
                                            400 6th Street, N.W. Suite 10100
                                            Washington, D.C. 20001
                                            Phone: (202) 735-7520
                                            Email: helen.rave@dc.gov

                                            *Counsel for Defendants*

**App. 41**

# EXHIBIT 1

**Advisory Neighborhood Commission 6C**
**Wednesday, November 9, 2022, 7 pm**
**WebEx teleconference**

The chair called meeting to order at 7:02 p.m.

**Quorum**

A quorum of 6 out of 6 commissioners was present (Mr. Adelstein, Mr. Courtney, Mr. Eckenwiler, Ms. Healey, Mr. Kelty, and Ms. Wirt).

**Introductions**

The ANC 6C commissioners introduced themselves as representatives of their respective Single Member Districts.

**General Information on WebEx Teleconferencing**

Mr**.** Courtney, who is hosting this teleconference, provided instruction on how audience participants can be recognized to speak.  He also described a back-up plan in case of a WebEx cut-off after 40 minutes:  The meeting was reloaded on a Zoom platform after 5 minutes, with a link provided on the ANC website:  www.anc6c.org.

**Approval of the Agenda**

The November agenda was approved without objection. **Motion:**  Ms. Wirt/Mr. Eckenwiler.

**Approval of the October Minutes**

The draft October minutes were approved unanimously. **Motion**:  Ms. Healey/Mr. Eckenwiler. The November minutes, when drafted, will be posted on the website labeled as preliminary until the commissioners formally approve them at the next ANC full-Commission meeting.  The procedure allows the public to see the minutes in a timely manner.

**Treasurer's Report**

The treasurer presented the ANC 6C report for October.  The opening balance on October 1 was $51,389.71. There was National Capitol Bank interest payment of $2.18. Check 1418 was cashed for $108.00, reimbursement to Ms. Wirt for semi-annual payment of the ANC post office box. The closing balance on October 31 was $51,283.89.

Mr. Kelty mentioned that he is working with the OANC to provide documentation for two grants: the grant to the Literary Festival at Eastern Market and the grant to the Capital Hill Garden Club. He is awaiting clearance from the OANC.

**Brief Community Announcements**

Commissioner announcements—Mr. Kelty addressed a rat population explosion on Capitol Hill.  He has been working with a DPW inspector regarding Operation Clean Sweep, specifically the blocks between 5th and 6th Streets, F and G Streets NE. The program is designed to educate, monitor, and enforce.  Regulations require bins to be put out by 6 am on pickup days. They should be put out no earlier than 6:30 pm the day before pickup days and retrieved by 8 pm on pickup days from public space.  Bins cannot be left in alleys; if hit by a vehicle they are no longer useful in preventing rat infestation.  Residents in an Operation Clean Sweep area will be

**App. 43**

given a 3-week period to comply, after which they will receive a ticket with a $150 fine. Mr. Eckenwiler mentioned a multi-agency walk on H Street for ANC commissioners that will include DOH. It will be scheduled before Thanksgiving.  Ms. Healey thanked Mr. Kelty for the rat abatement information and congratulated ANC 6C commissioners elected in the 2022 election on Tuesday.

**Consent Calendar**

*Transportation and Public Space Committee* (Mr. Upright, chair)
   1. North Capitol Street Corridor Study—CAC members will tour the North Capitol Street Corridor.
   2. Electrical vehicle (EV) charging sites—George Washington University students requested that the ANC participate in a one-question survey on potential locations of EV charging stations. The committee recommended recreation centers, pools, libraries, Union Station, and grocery stores in DC, not in public space.
   3. Two Rivers Public Charter School, 1227 4th Street NE—School staff requests a new School Parking Zone (SPZ) for the 2002-2023 school year. DDOT requests ANC input.  The committee recommends opposition because DDOT did not provide sufficient documentation, including how many parking spots are requested, what measures are taken to encourage not driving, and the impact on the affected neighborhood.
   4. FedEx, 300 Maryland Avenue NE—DDOT requests ANC review of the existing curb cut for the FedEx property on the Third Street side.  The committee recommends opposing the 22' curb cut and reducing the size to one automobile or one truck width.

*Planning, Zoning, and Economic Development Committee* (Mr. Eckenwiler, chair)
   1. 601 Massachusetts Ave NE, HPA 23-040—Concept approval to raze an existing one-story noncontributing building currently used as a dry cleaner to construct a three-story residential building. The applicant revised the plans to a full raze after HPO determined the building was not a contributing structure but the committee identified several deficiencies in the revised plans. The applicant could request a postponement for review by the ANC in December. If so, there is no need for a letter from the ANC at this time.  Mr. Eckenwiler requested that he be authorized to testify on behalf of the ANC if needed. The committee recommends waiting for the applicant to respond.
   2. 663 Maryland Avenue NE, BZA 20816—Special exception from lot occupancy requirements to construct a two-story (with basement) rear addition to an existing attached three-story (with basement) existing dwelling. The committee previously reviewed this project as an HPRB application, which it supported. The consideration is now to review for any adverse impact on adjacent properties' air, light, and privacy.  The committee believes there are no such adverse impacts.  If needed, Mr. Eckenwiler asked to be authorized to testify. The committee recommends support.

The commissioners voted unanimously to support the consent calendar.  **Motion**:  Ms. Wirt/Mr. Eckenwiler.

**Alcoholic Beverage Licensing Committee** (Steve O'Neal, chair)
   Renewal applications: Kelly's Irish Times, 14 F Street NW; Buffalo & Bergen, 240 Massachusetts Avenue NE; Red Bear Brewing Company, 1140-100 Third Street NE, Suite B;

2

**App. 44**

The Dubliner, 4 F Street NW; Hamilton's Bar & Grill, 233 2nd Street NE; Solid State Books, 600 H Street NE; Allure Lounge, 711 H Street NE; Bar Elena, 414 H Street NE; Big Board, 421 H Street NE.

The committee recommends no action on the applications except Allure Lounge, Bar Elena, and Big Board. For these three applications the recommendation is for opposition on all three grounds (negative effects on surrounding properties; negative effects on traffic; and negative effects on the peace, order, and quiet of neighborhoods). For Allure Lounge, authorized representatives are Graham Grossman (a member of the ANC 6C Alcoholic Beverage Licensing Committee) and Mr. Kelty as backup; for Bar Elena, Graham Grossman; and for Big Board, Mr. Eckenwiler with Mr. Kelty as backup. The commissioners voted unanimously on these three motions. **Motions:** Ms. Wirt/Mr. Eckenwiler.

In addition, Mr. Kelty asked to serve as authorized backup for Graham Grossman on the protest for Vision Lounge because the negotiations could take some time.

The commissioners voted unanimously to support this request. **Motion**: Mr. Kelty/Mr. Eckenwiler.

**Planning, Zoning, and Economic Development, plenary session**
616 Lexington Place NE, HPA 22-486—The committee received inadequate documentation for this application before its meeting and made no recommendation. The chair alerted the applicant before the meeting but no new documentation was received. Three hours after the meeting the committee chair received new materials, but they were still deficient. The committee chair recommends renewed opposition and that he be authorized to testify on November 17. The commissioners voted unanimously to support the committee. **Motion**: Mr. Eckenwiler/Mr. Kelty.

**Declan Falls, Chair Mendelson's community representative**
Mr. Falls stated the current legislative session is coming to a close. The remainder of the current session includes a focus on education and chronic absenteeism/truancy. An upcoming oversight hearing of the Committee of the Whole on this subject is scheduled for November 30. Residents are encouraged to testify. Mr. Mendelson's next townhall is Monday, November 14 at 5 pm. Mr. Kelty asked about any legislative action on illegal marijuana distribution on H Street NE, and Mr. Falls responded there were no updates. Mr. Eckenwiler referred to his previous testimony before the Council highlighting the nature of ANC 6C's concerns regarding the distribution of marijuana.

**Grants Committee** (Victoria Lord, chair)
Ms. Wirt stated the message from the Grants Committee, which is that the deadline for the next grants submission is November 17 for grants to be awarded in January 2023. Details are on the ANC website, www.anc6C.org.

Hearing no additional business, the chair adjourned the meeting at approximately 7:40 pm.

**App. 45**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ERIC J. FLANNERY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:23-cv-02804-ABJ |
| | ) | |
| MARK ECKENWILER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**App. 46**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

   I.  Plaintiffs have alleged sufficient facts to establish Defendants retaliated against them in violation of the First Amendment. ....................................................................... 4

    A.  Plaintiffs' Complaint sufficiently alleges that Plaintiffs engaged in protected conduct. 4

    B.  Plaintiffs' Complaint sufficiently alleges that Defendants took retaliatory action sufficient to deter a person of ordinary firmness in Plaintiffs' position from continuing to speak. ............................................................................................................. 7

    C.  Plaintiffs' Complaint sufficiently alleges that there exists a causal link between the exercise of a constitutional right and Defendants' adverse action taken against Plaintiffs. ...................................................................................................... 9

   II.  Plaintiffs' Complaint sufficiently alleges that all Defendants retaliated against Plaintiffs....................................................................................................... 13

   III.  Defendants are not entitled to qualified immunity. ........................................... 14

CONCLUSION................................................................................................................... 18

**App. 47**

## INTRODUCTION

Eric Flannery owns (through Drane Flannery Restaurant LLC) and runs a tavern named "The Big Board" in Washington, D.C. He proudly declares that "everyone is welcome." Compl. at ¶ 30. But in 2020, the Mayor of Washington, D.C. began to undermine this welcoming atmosphere with mask and vaccine passport mandates. Mr. Flannery believed that the Mayor's mandates were unlawful and, through the exercise of his First Amendment rights, he made his disagreements with the Mayor's actions known via Twitter, media interviews, and otherwise. Consistent with his verbal and written statements, he further showed his disagreement by declining to enforce those mandates in his establishment and even took legal action challenging them. Compl. at ¶¶ 3, 33, and 84. He publicly expressed that he was not enforcing the mandates. *See* Compl. at ¶¶ 3, 30, 33, and 84.

Certain governmental officials—members of the local Advisory Neighborhood Comission-6C (ANC)—took notice of Mr. Flannery's public statements and at least one began to openly demean and mock Mr. Flannery on social media. The officials' reaction was particularly significant because they had the unique statutory ability to harm him by protesting his liquor license. And when it came time for Mr. Flannery to renew The Big Board's liquor license, the ANC in fact protested his license renewal in their official capacity.

During the November 7, 2022, official ANC meeting[1] discussing a possible protest of The Big Board's liquor license, one of the ANC commissioners—Defendant Mark Eckenwiler—

---

[1] "Each Commission, including each committee of a Commission, shall be subject to the open meetings provisions of § 1-207.42." D.C. Code § 1–309.11(g). § 1–207.42. "All meetings (including hearings) of any department, agency, board, or commission of the District government . . . at which official action of any kind is taken shall be open to the public." D.C. Code § 1-207.42(a). "A written transcript or a transcription shall be kept for all such meetings and shall be made available to the public . . . ." *Id.* at (b). Contrary to the D.C. Code and the ANC's policy to keep agendas and meeting minutes of its meetings, *see* Mot. to Dismiss at 4, n.4, the ANC did not maintain records of this meeting.

**App. 48**

referenced Mr. Flannery's speech as the basis for protesting The Big Board's license, stating: "I mean just some of the things he's said publicly, we should go ahead and protest the license." Compl. at ¶ 43. No one at that meeting and none of the ANC Commissioners rejected or challenged this retaliatory rationale and no one gave any other rationale. The ANC subsequently filed its protest, using the statutory protest justifications as a pretext—which pretext later became apparent. A license protest inevitably works a hardship on the licensee, including hiring attorneys, responding to government inspectors, and preparing for hearings and mediations. Mr. Flannery has indeed endured each of those harms here. Compl. at ¶¶ 79–80. Mr. Eckenwiler certainly understood this when he publicly declared: "Play stupid games, win regulatory prizes." Compl. at ¶ 35.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "While the Amendment refers to Congress, its prohibition against infringements on free speech applies equally to executive actions." *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1140 (D.C. Cir. 2023) (citing *Hartman v. Moore*, 547 U.S. 250, 254 (2006) (*Bivens* action against postal inspectors for inducing a prosecution in retaliation for speech)). The First Amendment's protections against executive infringements on free speech "was directed at the 'core abuse' of licensing laws that granted broad discretion to enforce vague legislative schemes." *Id.* (quoting *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 320 (2002)). "Any form of official retaliation for exercising one's freedom of speech, including prosecution, *threatened prosecution, bad faith investigation, and legal harassment*, constitutes an infringement of that freedom." *Lackey v. Cnty. of Bernalillo*, 166 F.3d 1221 (10th Cir. 1999) (emphasis added) (citing *Reporters Committee for Freedom of the Press v. AT & T Co.*, 593 F.2d 1030, 1064 (D.C. Cir. 1978)).

Defendants' initiation and prosecution of a frivolous protest of Plaintiffs' liquor licenses in

**App. 49**

retaliation for Mr. Flannery's protected speech violates the First Amendment, and Plaintiffs have sufficiently pled as much.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Wharf, Inc. v. D.C.*, 133 F. Supp. 3d 29, 33 (D.D.C. 2015) (citing *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994)). "A court must 'assess [ ] the legal feasibility of the complaint, but [may] not weigh the evidence that might be offered to support it.'" *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 950 (D.C. Cir. 2013) (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006)).

The Complaint gives the Defendants fair notice and the claim is facially plausible.

**App. 50**

**ARGUMENT**

**I.   Plaintiffs have alleged sufficient facts to establish Defendants retaliated against them in violation of the First Amendment.[2]**

For a First Amendment retaliation claim to survive a motion to dismiss, a plaintiff must plead sufficient factual allegations that (1) "he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. D.C.*, 796 F.3d 96, 106 (D.C. Cir. 2015) (emphasis added) (quoting *Aref v. Holder*, 774 F.Supp.2d 147, 169 (D.D.C. 2011)). Courts have also recognized that a plaintiff satisfies the second element by establishing that "the defendant's actions would chill a person of ordinary firmness from *continuing to engage* in the protected activity." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (emphasis added)).

Plaintiffs' Complaint meets this requirement.

**A. Plaintiffs' Complaint sufficiently alleges that Plaintiffs engaged in protected conduct.**

1. "Political speech lies at the core of speech protected by the First Amendment, as it is the means by which citizens disseminate information, debate issues of public importance, and hold officials to account for their decisions in our democracy." *Nat'l Ass'n for Gun Rts., Inc. v. Mangan*, 933 F.3d 1102, 1111 (9th Cir. 2019). Plaintiffs' twitter postings, media appearances, and other statements criticizing the Mayor's actions are speech—and they are political speech.

---

[2] Plaintiffs allege that the official actions of filing and prosecuting the protest against Plaintiffs are the primary retaliatory actions. Defendant Eckenwiler's Twitter posts, like his and other commissioners comments, are evidence that the filing and prosecuting of the protest was in retaliation for Plaintiffs' speech. However, newly discovered evidence suggests that at least some of Defendant Eckenwiler's posts were made in his official capacity as an ANC Commissioner. *See infra* at 8.

**App. 51**

*See, e.g.*, Compl. at ¶¶ 30, 84. Defendants do not attempt to deny that Plaintiffs' speech is protected by the First Amendment. This satisfies the first element of a First Amendment retaliation claim.

2. Defendants do challenge Plaintiffs' other expressive conduct as speech. Given that Plaintiffs have already satisfied the first element of the cause of action, it is unnecessary to address Plaintiffs' other conduct. Nevertheless, it is worth noting that Plaintiffs' other conduct is sufficiently expressive to be protected conduct under the First Amendment.

> With conduct,
>
> the First Amendment comes "into play" only where "particular conduct possesses sufficient communicative elements," *Texas v. Johnson*, 491 U.S. 397, 404 (1989), that is, when an "*intent* to convey a particularized message [is] present, and *in the surrounding circumstances* the likelihood [is] great that the message would be understood by those who viewed it," *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)."

*United States Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 741 (D.C. Cir. 2016) (emphasis added) (cleaned up). By disobeying the mandates, publicizing those actions, and filing lawsuits challenging them, Plaintiffs' intent to convey a particularized message is clear: "As has always been the case for us, everyone is welcome." Compl. ¶ 30; The Big Board (@thebigboarddc), Twitter (Jan 13. 2022), https://perma.cc/M3GP-JKAM.

As the Court has emphasized, the surrounding circumstances of the conduct are important when determining if the message would be understood by those who viewed it. *Johnson*, 491 U.S. at 406. ("Johnson burned an American flag as part—indeed, as the culmination—of a political demonstration that coincided with the convening of the Republican Party and its renomination of Ronald Reagan for President. The expressive, overtly political nature of this conduct was both intentional and overwhelmingly apparent."); see also The Big Board (@thebigboarddc), Twitter (Jan 13. 2022), https://perma.cc/7NES-BSFH. (Tweet by The Big Board welcoming everyone notwithstanding the mandates with 50 retweets, 64 quote tweets, and 481 likes). At the time of the

5

**App. 52**

expressive conduct, D.C. limited access to restaurants to those who wore a mask and proved that they had been vaccinated. Compl. at ¶¶ 2–5. This was the opposite of welcoming everyone. Welcoming everyone into your establishment with or without masks and vaccination cards when the government says you cannot do so is conduct that is expressive. In fact, Defendant Eckenwiler understood the meaning of the conduct: "When you've decided to flout the vaccine mandate taking effect on Jan. 15 at D.C. bars & restaurants, but don't quite have the stones to say so . . . ." Compl. at ¶ 35 (Defendant Eckenwiler commenting on The Big Board's "everyone is welcome" tweet). Defendant Eckenwiler's tweet suggests that he equated flouting the mandate and welcoming everyone into the bar regardless of whether they had the required vaccine cards with communicating a protest against the vaccine mandate.

Additionally, Plaintiffs' challenging these mandates through legal proceedings expressed their belief that these mandates were unlawful. As this Court has recognized, "the non-frivolous use of administrative grievance and legal processes is protected by the First Amendment," and the government cannot retaliate against that protected conduct. *Harrison v. Fed. Bureau of Prisons*, 298 F. Supp. 3d 174, 182–83 (D.D.C. 2018) (citing *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584–88 (D.C. Cir. 2002)). *See also Scahill v. D.C.*, 271 F. Supp. 3d 216, 235 (D.D.C. 2017), *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018) ("In moving for reconsideration of the Board's order, filing a petition for review, and then filing this suit, plaintiffs have clearly engaged in 'protected conduct.'") (citation omitted)).

Thus, construing the Complaint in the light most favorable to Plaintiffs, the Complaint sufficiently pleads that they engaged in protected spoken and written speech, as well as protected expressive conduct.

**App. 53**

**B. Plaintiffs' Complaint sufficiently alleges that Defendants took retaliatory action sufficient to deter a person of ordinary firmness in Plaintiffs' position from continuing to speak.**

Plaintiffs allege that Defendants' official retaliatory action was filing and prosecuting the protest of Plaintiffs' liquor license renewal. This is no small thing. A liquor license has great value, and for a bar or tavern, it is self-evidently the lifeblood of the establishment. Defendants' efforts to take away Plaintiffs' liquor license is a dire threat. It is not an overstatement to say that if the protest were successful, it would destroy Mr. Flannery's business. And even if a protest is frivolous, it does not mean it will go away on its own. As Plaintiffs allege, "[b]ecause of Defendants' actions, Mr. Flannery suffered damages to his, and his tavern's, reputation, emotional distress, the expense of defending against the frivolous protest of his liquor license, and a violation of his First Amendment rights." Compl. at ¶ 86. *See also Toolasprashad*, 286 F.3d at 585 ("If, as we held in *Crawford-El*, small 'pecuniary losses . . . in the form of the costs of shipping . . . boxes and replacing clothing' are sufficient to 'deter a person of ordinary firmness . . . from speaking again,' then surely [ ] alleged deprivations [of the ability to obtain a prison job and be close to family] also meet this standard.").

Despite this, Defendants suggest that their actions would not deter a person from continuing to speak or speaking again by noting that Plaintiffs' establishment was still operating during the frivolous protest. Mot. to Dismiss at 11. This is a non sequitur. Plaintiffs' engaged in speech. Defendants filed a protest in retaliation. The protest alone does not revoke the liquor license or lose the establishment. But the threat of destroying someone's business, whether made by a government official or a non-governmental enterprise, will certainly give anyone pause to speak out again. *See, e.g.*, *Blankenship v. Manchin*, 471 F.3d 523, 525 (4th Cir. 2006) (affirming the denial of a motion to dismiss a complaint by a company chairman in which he asserted a First Amendment violation based on an official's threat to "scrutinize the affairs of" the chairman's

**App. 54**

business "in retaliation for" his decision "to publicize his opposition through interviews" to the official's policy); *Zieper v. Metzinger*, 62 F. App'x 383, 386 (2d Cir. 2003) ("[A]s the Supreme Court explained in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963), the First Amendment prohibits government officials from using 'informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—. . . to achieve the suppression' of protected speech.").

Defendants' threat to Plaintiffs' lifeblood is exacerbated by the fact that "[t]he ANC 6C possesses statutory authority—giving it preferential treatment with ABRA to protest liquor licenses. This statutory authority, and the actual use of it for retaliatory purposes, [would] deter an ordinary person from speaking [again]." Compl. at ¶ 87. As Defendants point out, D.C. Code § 25-601 limits who may file such a protest, and ANCs are one such entity. This authorization gives them power—power which Defendants used and, in this case, abused.[3]

Defendants also assert that Mr. Eckewiler's tweets mocking, condemning, and belittling Mr. Flannery and The Big Board are his personal comments only. At the time Plaintiffs filed the Complaint, it was unclear if he made these comments in his individual capacity or as an ANC Commissioner. But it is reasonable to infer for purposes of viewing the Complaint in the best light that he was making these statements as a commissioner. *See, e.g.*, *Campbell v. Reisch*, 367 F. Supp. 3d 987, 995 (W.D. Mo. 2019) (reasonable to infer at the motion to dismiss stage that a public official's social media activity falls within "her capacity as a public official"). Post filing, however, Plaintiffs have learned of similar comments Mr. Eckenwiler posted elsewhere in which he concluded: "As your ANC commissioner, however, I want to be very clear about my own position

---

[3] This is not the only time an ANC has been accused of such abuse. *See* Amanda Michelle Gomez, *On H Street, Some Black Business Owners Say They're Fighting The Neighborhood*, dcist (Sept. 11, 2023), https://perma.cc/DG26-DYCP.

**App. 55**

on [the] issue [of The Big Board] for whatever it may be worth. Mark Eckenwiler Commissioner, ANC 6C04 Vice-Chair, ANC 6C, www.anc6c.org."[4] But even if Eckenwiler tweeted in his personal capacity, his tweets demonstrate his retaliatory motive when he protested Plaintiffs' liquor license in his official capacity.

Thus, Plaintiffs' Complaint sufficiently alleges that Defendants took retaliatory action sufficient to deter a person of ordinary firmness in Plaintiffs' position from continuing to speak.

### C. Plaintiffs' Complaint sufficiently alleges that there exists a causal link between the exercise of a constitutional right and Defendants' adverse action taken against Plaintiffs.

"To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." *Doe*, 796 F.3d at 107. "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Plaintiffs' Complaint alleges that Defendant Eckenwiler—who Defendants' do not deny disparaged Plaintiffs online—"as the representative of ANC 6C, pushed the ANC 6C to vote for and file" the protest against Plaintiffs. Compl. at ¶ 10. As Plaintiffs' allege, Defendant Eckenwiler did so because of "some of the things [Plaintiffs'] *said* publicly." Compl. at ¶ 43 (emphasis added). This shows a causal link between Mr. Flannery's constitutionally protected speech and Eckewiler's actions to protest Plaintiffs' liquor license. And, none of the other Defendants, who all voted along with Eckenwiler, disputed that was the reason to file the protest. Plaintiffs' allegations establish

---

[4] Commissioner Eckewiler's comments posted on January 22, 2022 are available (after creating an account) on a publicly available listserve here: https://perma.cc/4SWB-UHUS. As Defendants have noted (Mot. to Dismiss at 3, n.2), the court may take judicial notice of certain facts. *See* Fed. R. Evid. 201. Commissioner Eckewiler's publicly available post is generally known within the court's jurisdiction (i.e. on the internet) and "can be accurately and readily determined from [the listserve where posted and the] accuracy [of the post] cannot reasonably be questioned." *Id.*

**App. 56**

the required "'causal connection' between the government defendant[s'] 'retaliatory animus'" and the harm they caused by filing the protest, against which Plaintiffs had to defend. *Capp*, 940 F.3d at 1053.

Plaintiffs also allege that Defendant Courtney "pushed the ANC 6C to vote for and file this protest because of The Big Board's 'bad behavior in recent years.'" Compl. at ¶ 11. Defendants suggest that this somehow excuses Courtney's vote to protest Plaintiffs' liquor license. But that does not excuse his failure to contest Eckewiler's statement. Rather it reinforces it. Courtney never suggested this "bad behavior" was something different than Mr. Flannery's speech. And even if he was referring to non-verbal behavior, *behavior* and *actions* include protected speech and protected expressive conduct. *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010) (The First Amendment protects more than just speech, "affording broad protection from governmental intrusion for conduct involving expression.").

Similar to this Court's findings in *Loumiet*—as evidenced by Defendants' statements—but for his protected speech, defendants in that case would not have brought an enforcement action against that plaintiff, and therefore, Plaintiffs' complaint survives a motion to dismiss. *Loumiet v. United States*, 255 F. Supp. 3d 75, 95 (D.D.C. 2017), *reversed on other grounds*, 948 F.3d 376, 445 (D.C. Cir. 2020). "This view of the Complaint is corroborated by the fact that" the District Alcoholic Beverage Regulation Administration (ABRA) "ultimately concluded that the enforcement action was not meritorious." *Id.* (citing, *Hartman*, 547 U.S. at 261 ("Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution.")). And, as Plaintiffs allege, this view is also strengthened by the fact that Defendants submitted a settlement agreement with no relationship to the items in the written protest, refused

**App. 57**

to negotiate with counsel for Plaintiffs, refused to provide any evidence supporting the protest, refused to participate (in any meaningful way) in the mediation of the protest, and withdrew their protest shortly before the protest hearing. *See* Compl. at ¶¶ 55–79.

As Defendants noted, there were nine licenses—including Plaintiffs'—discussed at the November 7, 2022, ANC 6C's Alcoholic Beverage Licensing Committee meeting. Mot. to Dismiss at 5. The committee recommended—and Defendants later agreed—to take action on two licenses besides Plaintiffs' license. Of course, unlike this case, Plaintiffs have no information if ANC 6C also protested those other licenses in retaliation for those establishment's protected speech or other impermissible reason.[5] And the ANC's actions as to other bars' licenses do not evidence a lack of a retaliatory motive here. *See Branch Ministries v. Rossotti*, 211 F.3d 137, 144–145 (D.C. Cir. 2000) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.")).

Defendants' attempt to cast doubt on their own retaliatory motive for filing the protest by citing to cases dealing with the length of time between the plaintiff's constitutionaly-protected activity and the defendant's retaliatory action. However, "there is, of course, 'no "hard-and-fast rule" regarding the temporal proximity that must exist between protected activity and the adverse action.'" *BEG Invs., LLC v. Alberti*, 144 F. Supp. 3d 16, 22 (D.D.C. 2015) (quoting *Manuel v. Potter*, 685 F.Supp.2d 46, 68 (D.D.C. 2010)). Whether temporal proximity is important depends on the facts of the case. Here, unlike the only applicable[6] case cited by Defendants, Plaintiffs rely on Defendants' own statements, not on the temporal proximity. *See Scahill*, 271 F. Supp. 3d at 235, *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018) ("There is no hard and fast rule as to how close in time the

---

[5] Discovery may yield information on this.

[6] Defendants cite to *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), a case dealing with Title VII retaliation, which makes no reference to the First Amendment and is inapplicable.

**App. 58**

protected action and the alleged retaliation must be, but *when plaintiffs rely on temporal proximity alone* to establish causation, the alleged retaliation must take place 'very close' in time to the protected conduct. ") (emphasis added) (citation omitted). Even so, Defendants took advantage of their first opportunity for retaliation, i.e. filing a protest as soon as The Big Board's license came up for renewal. Moreover, if temporal proximity is relevant, Commissioner Courtney set the temporal time frame when he explicitly stated that he was looking back in time at "recent years," Compl. at ¶ 11, when he chose to vote for the license protest.

Defendants also attempt to cast doubt on their retaliatory motive by passing the blame onto the Alcoholic Beverage and Licensing Committee. Defendants point to the fact that the committee was chaired by a "private individual" and Defendants' adopted all the committee's recommendations. Mot. to Dismiss at 3–4. However, these facts do not undermine Plaintiffs' claims. First, "[i]n accordance with District law, the chairmanship of each Commission committee . . . shall be appointed by the Commission." ANC6C Bylaws, Art. VIII, § 2, https://perma.cc/L26M-G6MQ (last visited Dec. 7, 2023); *accord* D.C. Code § 1–309.11(f). By virtue of an individual's appointment to the Commission, such individual is a public official. Second, "[c]ommittees . . . of a Commission shall be advisory only, except that a Commission may officially adopt committee . . . determinations. A Commission shall not delegate official decision-making authority to any committee or task force." D.C. Code § 1–309.11(f-1). Whether or not the committee took issue with the Plaintiffs is not relevant to the official action taken by Defendants. It is Defendants who made the final vote and it is Defendants' comments that evidence that the final vote was taken with a retaliatory motive.

Thus, Plaintiffs' Complaint sufficiently alleges that there exists a causal link between the exercise of a constitutional right to speak and the adverse action taken against them, and the

**App. 59**

remaining First Amendment retaliation elements.

## II.   Plaintiffs' Complaint sufficiently alleges that all Defendants retaliated against Plaintiffs.

Plaintiffs' Complaint should not be dismissed as to any Defendant as it sufficiently alleges that *all* Defendants retaliated against Plaintiffs. Defendants request, "[a]t a minimum," dismissal of Plaintiffs' Complaint against "Defendants Wirt, Kelty, Adelstein, Healey, and Courtney. Mot. To Dismiss at 14. Plaintiffs named these five commissioners because they, along with Defendant Eckewiler, voted to protest Plaintiffs' liquor license. It appears that they all voted for the protest based on, as Commissioner Eckewiler asserted—"I mean just some of the things he's said publicly, we should go ahead and protest the license"—rather than for any legitimate reason.

"At the pleading stage, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App' x 851, 857 (2d Cir. 2014) (cleaned up). "Indeed, Rule 9(b) of the Federal Rules of Civil Procedure provides that 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 131 (E.D.N.Y. 2011) (quoting *Soundview Assoc. v. Town of Riverhead*, 725 F.Supp.2d 320, 340 (E.D.N.Y. 2010)). Even in less deferential stages of litigation,

> "direct evidence in proving illegitimate intent is not required . . . in unconstitutional retaliation claims; circumstantial evidence will suffice." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995). In fact, "direct evidence of improper motive is usually difficult, if not impossible, to obtain and requiring direct evidence would effectively insulate from suit public officials who deny an improper motive in cases such as this." *Id.* Thus, a circumstantial "trail of breadcrumbs" may suffice to support a jury's conclusion that a defendant harbored a retaliatory motive based on the plaintiff's protected speech. *Jordan v. Ector Cty.*, 516 F.3d 290, 301 (5th Cir. 2008).

*Anderson v. Valdez*, 293 F. Supp. 3d 636, 666 (S.D. Tex. 2017), *rev'd on other grounds*, 913 F.3d 472 (5th Cir. 2019).

First, all Defendants voted, as members of the ANC, to file a frivolous liquor license protest.

**App. 60**

Further, Plaintiffs allege that "at the time that the [Defendants] voted for and filed the protest, every member of the commission knew that the[ ] grounds [for filing the protest] were false and had no basis in fact or law . . . ." Compl. At ¶ 54. Plaintiffs' further allege that all Defendants knew that the protest was "a pretext for retaliation against Plaintiffs' protected expression." *Id.* By alleging that all Defendants knew of the pretextual retaliatory motive, Plaintiffs' sufficiently alleged that all Defendants participated in this retaliatory motive by taking official action in voting for the protest. *See, e.g., Brewer v. Town of Eagle*, No. 20-CV-1820-JPS, 2023 WL 2592165, at *13 (E.D. Wis. Mar. 21, 2023) ("'[B]y showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on' and, therefore, 'by failing to do anything must have encouraged or at least condoned [the activity],'" the plaintiffs sufficiently alleged the policy makers shared in the retaliatory motive.) (quoting *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995)).

Therefore, Plaintiffs' Complaint should not be dismissed as to any Defendant as it sufficiently alleges that *all* Defendants retaliated against Plaintiffs.

## III.   Defendants are not entitled to qualified immunity.

Defendants are not entitled to qualified immunity[7] as it is clearly established that retaliation against protected speech is unconstitutional. Whether a government agent is entitled to qualified immunity "depends upon the answers to two questions: (1) Did the [government officials'] conduct violate a constitutional or statutory right? If so, (2) was that right clearly established at the time of the violation?" *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018).

---

[7] The very concept of qualified immunity in the context of § 1983 claims is questionable. Recent scholarship and statements by justices of the Supreme Court suggest that the Court's qualified immunity doctrine is based on a misinterpretation of that statute. Alexander Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023); *see also Hoggard v. Rhodes*, 141 S. Ct. 2421 (2021) (Thomas, J., respecting the denial of cert.) (suggesting the Court should reconsider the doctrine in the context of § 1983 claims).

**App. 61**

First, Defendants' conduct of protesting Plaintiffs' liquor license in retaliation for Plaintiffs' clearly

protected speech against government action is a violation of a constitutional right. Thus, the answer

to the first question is yes.

As to the second question, the right to be free from retaliatory actions is clearly established.

Though some courts have broadly interpreted the clearly established prong of qualified immunity,

"the one-size-fits-all doctrine is [ ] an odd fit for many cases . . . ." *Hoggard*, 141 S. Ct. 2421

(2021) (Thomas, J., respecting the denial of cert.). This is especially true for cases, like here, where

the government agent has time to consider whether what they are doing would violate someone's

constitutional rights. *Id.*

> Whether qualified immunity can be invoked turns on the "objective legal
> reasonableness" of the official's acts. And reasonableness of official action, in turn,
> must be "assessed in light of the legal rules that were clearly established at the time
> [the action] was taken." This requirement—that an official loses qualified immunity
> only for violating clearly established law—protects officials accused of violating
> "*extremely abstract rights*."

*Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (emphasis added) (citations omitted).

> It is not necessary, of course, that "the very action in question has previously been
> held unlawful." That is, an officer might lose qualified immunity even if there is no
> reported case "directly on point." But "in the light of preexisting law," the
> unlawfulness of the officer's conduct "must be apparent."

*Id.* (citations omitted). And, in some cases, the unlawfulness of Defendants' conduct is so obvious

that it is sufficiently clear. *See Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 47, *aff'd sub*

*nom. Buchanan v. Barr*, 71 F.4th 1003 (citing *Browder v. City of Albuquerque*, 787 F.3d 1076,

1082–83 (10th Cir. 2015) (Gorsuch, J.) (reasoning that "some things are so obviously unlawful

that they don't require detailed explanation and sometimes the most obviously unlawful things

**App. 62**

happen so rarely that a case on point is itself an unusual thing")).[8]

As Defendants acknowledge, there is no question that the First Amendment—as recognized by the Supreme Court and the courts in this circuit—prohibits First Amendment retaliation. Mot. to Dismiss at 6. Unlike "abstract rights," such as "whether a search or seizure will be deemed reasonable given the precise situation encountered," *Ziglar*, 582 U.S. at 151, "the general right to be free from retaliation for protected speech is clearly established," *Black Lives Matter D.C.*, 544 F. Supp. 3d at 47, *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003. In the First Amendment context, "the touchstone remains whether the 'contours of the right are clear to a reasonable [official].'" *Daugherty*, 891 F.3d at 390 (quoting *Reichle v. Howards*, 566 U.S. 658, 665 (2012)). Thus, the question is whether it is clearly established that retaliation through an improper inducement or prosecution of an enforcement action violates Plaintiffs' First Amendment rights.

This Court has recognized that improperly inducing an enforcement action is a prohibited retaliatory action. *Loumiet*, 255 F. Supp. 3d at 95, *rev'd on other grounds*, 948 F.3d 376 (D.C. Cir. 2020).[9] *See also Moore v. Hartman,* 388 F.3d 871, 885 (D.C. Cir. 2004) (noting that prior precedent "established the elements of retaliatory prosecution, making plain that what the inspectors were doing—prosecuting a case they otherwise would have left alone—violated the First Amendment"), *rev'd and remanded on other grounds*, 547 U.S. 250 (2006) (abrogating D.C. Circuit precedent

---

[8] Of course, government officials are always charged with knowing and following the law. Here, Mr. Eckenwiler's statements and retaliatory actions are even more egregious since he is a member of the D.C Bar, admitted in 2013, and previously served as an attorney at the Department of Justice. *Electronic Communications Privacy Act (Ecpa) (Part II): Geolocation Privacy And Surveillance: Hearing Before the Subcomm. on Crime, Terrorism, Homeland Security, and Investigations of the H. Comm. on the Judiciary,* 113th Cong. 34 (2013) (Statement of F. James Sensenbrenner, Jr., Chairman, H. Comm. on the Judiciary) (introducing Defendant Eckenwiler).

[9] In *Loumiet*, the D.C. Circuit reversed the district court because the plaintiff attempted to enforce his rights through a *Bivens* action. The Circuit Court's refusal to extend *Bivens* does not place any doubt on the determination that inducing an enforcement action is a prohibited retaliatory action.

**App. 63**

and clearly establishing that absence of probable cause must be pleaded for § 1983 actions brought against criminal investigators for inducing prosecution in retaliation for speech). In *Loumiet*, this Court denied a motion to dismiss where the government defendants "improperly induce[d] an enforcement action against [the] Plaintiff in reprisal for critical statements that he made against them and the [Office of the Comptroller of the Currency] more generally." *Loumiet*, 255 F. Supp. 3d at 95. This Court rejected the defendants' qualified immunity claim—relying on the above cited D.C. Circuit and Supreme Court retaliatory prosecution cases—noting the fact "[t]hat these cases did not involve an administrative proceeding is ultimately a distinction without a difference." *Id.* at 93.

> Based on these precedents, it has been clearly established, long before the [ANC] instituted the enforcement action against Plaintiff[s], that retaliatory action by [government] officials against protected speech is unconstitutional. And this general principle was further crystalized by authorities which held that retaliatory prosecutions were a particular example of this sort of unconstitutional behavior.

*Id.*

Likewise, the D.C. Circuit has recognized the difference between inducing an enforcement action for retaliatory purposes and other actions. In *Daugherty*, the plaintiff filed suit against FTC attorneys claiming that they "ramped up" their investigation of the plaintiff after the plaintiff criticized the FTC. *Daugherty*, 891 F.3d at 391. The D.C. Circuit noted that the FTC investigation had begun prior to the plaintiff's criticism of the FTC. *Id.* The plaintiff did not claim that the FTC had started its investigation because of his speech, but only that they ramped up the investigation. The court found that this was not a sufficient animus with the claimed injury.

In this case there had been no action against Plaintiffs' liquor license by the ANC prior to Plaintiffs' speech. It was only after Plaintiffs protected speech that ANC took retaliatory action by inducing the protest through the baseless filing. Defendant Eckenwiler's tweets confirm that he began taking issue with Plaintiffs' protected speech before ANC made any investigation (if ANC

**App. 64**

did any investigation at all) and certainly before ANC filed the protest. Thus, consistent with *Loumiet*, at the time of Defendants' actions it was clearly established in D.C. that inducing an enforcement action in retaliation for protected speech violates the First Amendment.

Indeed, the mere threat of retaliatory action is enough to remove the protection of qualified immunity. In *Blankenship*, the public official "threat[ened] [] increased regulatory scrutiny . . . ." *Blankenship*, 471 F.3d at 529–530. There, the government official's statements suggested that the plaintiff "would receive more scrutiny from state regulators than other, similarly situated companies." *Id.* at 530. And *Blankenship* is far more applicable than Defendants' cited case of *Moore v. Garnand*, 83 F.4th 743 (9th Cir. 2023). In *Moore*, and unlike here, the party instigating the investigation did not state that he was going take governmental action based on the plaintiff's protected speech. Similar to the situation here, the Ninth Circuit has held that government action (or even the threat thereof) based on the plaintiff's speech violates a clearly established right. *See Kando v. City of Long Beach*, No. 21-56199, 2023 WL 3092304, at *1 (9th Cir. Apr. 26, 2023).

Thus, precedent from this Court and courts from other circuits hold that Defendants' actions violate a clearly established constitutional right. Therefore, Defendants are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be denied.

**App. 65**

Respectfully submitted,

Dated: December 20, 2023

  /s/ David L. Rosenthal

Robert Alt* (OH Bar # 0091753)
David C. Tryon* (OH Bar #0028954)
Alex M. Certo* (OH Bar # 0102790)
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
Email: d.tryon@buckeyeinstitute.org

Patrick Strawbridge*
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

David L. Rosenthal (D.C. Bar ID 1660535)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
david@consovoymccarthy.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

19

**App. 66**

**CERTIFICATE OF SERVICE**

This will certify that a true and accurate copy of the foregoing Memorandum of Points and

Authorities in Opposition to Defendants' Motion to Dismiss has been served by operation of this

Court's electronic filing system this <u>20th</u> day of December 2023.


<u>  /s/ David L. Rosenthal</u>
David L. Rosenthal

**App. 67**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC J. FLANNERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-2804 (ABJ) |
| | ) | |
| MARK ECKENWILER | ) | |
| *in his personal capacity*, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER

Pursuant to Fed. R. Civ. P. 58 and for the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that defendants' motion to dismiss [Dkt. # 18] is **GRANTED** and the above-captioned case is **DISMISSED**.

This is a final, appealable order.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 30, 2024

**App. 68**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERIC J. FLANNERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-2804 (ABJ) |
| | ) | |
| MARK ECKENWILER | ) | |
| *in his personal capacity*, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Eric J. Flannery, and the restaurant he owns and operates, Drane Flannery Restaurant, LLC ("The Big Board"), filed this action against defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, and Jay Adelstein, stating that they were being sued in their personal capacities. *See* Compl. [Dkt. # 1]. Defendants all serve or once served as elected commissioners on the D.C. Advisory Neighborhood Commission 6C ("ANC 6C"). Compl. ¶¶ 18–23. The complaint consists of one count brought under 42 U.S.C. § 1983 alleging that defendants unlawfully retaliated against Flannery for his exercise of his First Amendment rights. Compl. at 12. Specifically, plaintiffs allege that:

> To retaliate against Mr. Flannery for his First Amendment-protected expressions of disagreement with the District's COVID policies, Mr. Eckenwiler—while holding an official position as commissioner and representative of ANC 6C—posted disparaging comments about The Big Board on Twitter. Additionally, Defendants—through their official positions as commissioners and of the ANC 6C—filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal.

**App. 69**

Compl. ¶ 85.  Plaintiffs seek a declaration that defendants' conduct violated their rights, damages including reimbursement for the attorneys' fees expended while defending against the liquor license protest, and punitive damages, as well as costs and attorneys' fees.  Compl. at 14.

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Defs.' Mot. to Dismiss [Dkt # 18]; Mem. in Supp. of Defs.' Mot. to Dismiss [Dkt. # 18-1] ("Mot."), and the motion is opposed and fully briefed.  *See* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss [Dkt. # 19] ("Opp."); *see* Defs.' Reply in Supp. of Defs.' Mot. to Dismiss [Dkt. #21] ("Reply").

While the Court finds the allegations concerning the flimsy and unsupported nature of the protest quite troubling, and it has not determined that it would find public officials to be immune to claims that they knowingly initiated an effort to have a state-issued license revoked on frivolous grounds, it does not need to reach that question because plaintiffs have failed to plausibly allege a necessary element of a First Amendment retaliation claim: that plaintiffs' constitutional speech was the but-for cause of the defendants' actions.  Therefore, the Court will **GRANT** defendants' motion to dismiss.

## BACKGROUND

Plaintiff Eric J. Flannery is the owner and operator of The Big Board, a local tavern located in ANC 6C's jurisdiction in Washington, D.C.  Compl. ¶¶ 28–29.  In December 2021, D.C. Mayor Muriel Bowser issued two emergency orders requiring restaurants to enforce the city's COVID-19-related mask mandate and to check customers' vaccination status beginning in mid-January 2022.  Compl. ¶¶ 2, 27, citing Mayor's Order 2021-147, 68 D.C. Reg. 13954 (Dec. 20, 2021), and Mayor's Order 2021-148, 68 D.C. Reg. 14222 (Dec. 22, 2021). "Both orders were issued for an initial 60-day period."  Compl. ¶ 2.  Flannery disagreed with the District's decision to impose the

**App. 70**

mandates, and he alleges that he "express[ed] his disapproval and disagreement on social media and elsewhere."  Compl. ¶ 3.  In January 2022, he published a tweet through the restaurant's account announcing that "everyone is welcome" at The Big Board.  Compl. ¶ 30.  In February 2022, the District's government suspended The Big Board's operating and liquor licenses indefinitely, forcing the restaurant to close for a period of time that is not set forth in the complaint. Compl. ¶ 31.  Following negotiations between the District and The Big Board, the District agreed to lift the suspension of The Big Board's operating license, as did the District of Columbia's Alcoholic Beverage Control Board ("ABCB") with respect to its liquor license.  Compl. ¶ 32; *see also* D.C. Alcoholic Beverage Control Bd., Order No. 2022-110, 22-CMP-00006 (Mar. 16, 2022) (lifting ABC license suspension following lapse of emergency COVID restrictions and approving offer-in-compromise).

According to the complaint, "[t]hrough all of this, Mr. Flannery continued to express his views opposing the mandates and the government's treatment of his restaurant by posting on Twitter and giving media interviews."  Compl. ¶ 33.  And plaintiffs allege that defendant Mark Eckenwiler, a commissioner of the ANC 6C, "showed his disdain for Mr. Flannery's expressed views and his animosity and animus towards Mr. Flannery through a series of attack tweets." Compl. ¶ 34.  Among the examples listed in the complaint is a tweet from Eckenwiler on an unspecified date in 2022 in which he allegedly shared screenshots of The Big Board's own tweets and commented, "When you've decided to flout the vaccine mandate taking effect on Jan. 15 at DC bars & restaurants, but don't quite have the stones to say so & instead resort to anti-vaxxer dog-whistling." Compl. ¶ 35a.  Plaintiffs also point to a screenshot Eckenwiler posted of an ABCB notice of a meeting concerning The Big Board's liquor license with the comment, "Actions have consequences," Compl. ¶ 35b, and his tweet containing a picture of the District Health

Department's closure notice on the establishment with the added comment, "Play stupid games, win regulatory prizes!"  Compl. ¶ 35c.

Approximately 8 months after the suspension, on or about October 21, 2022, The Big Board filed to renew its liquor license.  Compl. ¶ 36.  The Alcohol Beverages Regulation Administration ("ABRA") granted the renewal but, in accordance with District law, it permitted parties to protest the renewal, which can lead to the revocation of an entity's liquor license. Compl. ¶ 37–38.

The ANC 6C regularly holds meetings to discuss liquor license renewal applications within the Commission's jurisdiction.  Compl. ¶ 39.  On November 7, 2022, the ANC 6C's Alcoholic Beverage Licensing Committee held a public meeting at which The Big Board's liquor license was discussed, and plaintiff Flannery attended.  Compl. ¶ 40.  Flannery alleges that during a discussion of The Big Board's license, Eckenwiler stated, "I mean just some of the things he's said publicly, we should go ahead and protest the license."  Compl. ¶¶ 40, 43.  According to Flannery, none of the other committee members expressed disagreement with or challenged that statement. Compl. ¶ 44.  On November 9, 2022, a meeting of the full ANC 6C was held at which The Big Board's liquor license was discussed, and all members voted to file a formal protest of the restaurant's license renewal.  Compl. ¶ 48, 50.  The Commission designated Eckenwiler to serve as the body's representative for the protest.  Compl. ¶ 49.

According to the complaint, the written protest lodged by the ANC was based on three grounds: 1) that "The Big Board's operations have had a negative effect on 'real property values'"; 2) that "The Big Board has had a negative impact 'on the peace, order, and quiet, including the noise and litter provisions set forth in . . . the D.C. Code"; and 3) that "The Big Board has had a negative 'effect upon the residential parking needs and vehicular and pedestrian safety.'"

**App. 72**

Compl. ¶ 51.  Plaintiffs allege that "[n]one of these grounds were valid or had any basis in law or fact," Compl. ¶ 53, and that "at the time that the ANC 6C voted for and filed the protest, every member of the commission knew that these grounds were false."  Compl. ¶ 54.

According to the complaint, Eckenwiler rebuffed multiple attempts by Flannery and The Big Board's attorney to discuss or attempt to resolve the protest over the course of the next several months.  Compl. ¶ 55–62.  On the last day before a scheduled status conference with the ABRA, Eckenwiler transmitted a settlement agreement proposing terms under which the ANC 6C would withdraw its protest.  Compl. ¶¶ 63–64.  Plaintiffs state that the proposed settlement "did not address the alleged problems raised in the ANC 6C's protest," but rather "demanded that The Big Board take actions inconsistent with its license."  Compl. ¶ 65.  The proposal "would have required The Big Board to close early, to provide food at all hours when it is open[,] . . . prohibit live music, eliminate outdoor seating . . ., change food delivery times . . ., and more."  Compl. ¶ 66.

One February 26, 2023, The Big Board's attorney requested in writing that Eckenweiler provide "any evidence supporting the three items listed in the ANC 6C's protest," but allegedly nothing was ever provided.  Compl. ¶ 67.  As of the date of the filing of the complaint, The Big Board's attorneys had still not received any of the requested evidentiary material from Eckenwiler or anyone representing the ANC.  Compl. ¶ 71.  The attorney also submitted a proposed revised settlement agreement, to which neither Eckenwiler nor the ANC ever responded.  Compl. ¶ 70.

In February 2023, ABRA conducted its own independent investigation into the claims in the protest, monitoring The Big Board on eight separate occasions, and it found no violations to support the ANC's allegations.  Compl. ¶ 77–78.  On March 7, 2023, plaintiffs and Eckenwiler participated in a mandatory mediation session scheduled by the ABRA, but according to the complaint, Eckenwiler spoke for less than 45 seconds, announcing that he had attended the call as

**App. 73**

required and then hanging up.  Compl. ¶ 75.  The ANC 6C voluntarily withdrew its protest the following day, on or about March 8, 2023.  Compl. ¶ 79.

Plaintiffs filed suit in this Court on September 25, 2023, alleging that defendants unlawfully retaliated against Flannery for engaging in speech protected by the First Amendment. Compl. ¶¶ 81–89.  Plaintiffs allege that defendant Eckenwiler, individually, retaliated against Flannery when he published "disparaging comments about The Big Board on Twitter." Compl. ¶ 85.  Plaintiffs also allege that all defendants "filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal."  Compl. ¶ 85.  Defendants have moved to dismiss for failure to state a claim and on the basis of qualified immunity.  Mot. at 1.

**STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*,

**App. 74**

quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint "liberally in the plaintiff's favor." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, "the court need not accept inferences" drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.    The complaint fails to state a claim for a First Amendment violation.

Section 1983, enacted as part of the Civil Rights Act of 1871, provides:

**App. 75**

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, plaintiffs allege that defendants violated Flannery's First Amendment right of freedom of expression in two ways: first, that "Mr. Eckenwiler—while holding an official position as commissioner and representative of ANC 6C—posted disparaging comments about The Big Board on Twitter." Second, that "Defendants—through their official positions as commissioners and of the ANC 6C—filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal." Compl. ¶ 85.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019), quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quotation marks omitted). To state a claim for retaliation in response to First Amendment activities, a plaintiff must plausibly allege "(1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015), quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011).

**App. 76**

A.       **Plaintiffs fail to state a claim for retaliation based on defendant Eckenwiler's tweets.**

Plaintiffs allege that Eckenwiler unlawfully retaliated against them by posting "disparaging comments about The Big Board on Twitter" while Eckenwiler was "holding an official position as commissioner and representative of ANC 6C." Compl. ¶ 85. Defendant Eckenwiler argues that this part of the claim should be dismissed for two reasons: he argues that (1) his conduct does not implicate the First Amendment because the purported tweets were "directed at [p]laintiffs' decision not to abide by the Mayor's orders, not [p]laintiffs' speech or expressive conduct," *see* Mot. at 8; and (2) even if considered "speech" for purposes of the First Amendment, the tweets in question do not rise to the level of "adverse action." *See* Mot. at 9.

In this Circuit, a retaliatory action is materially "adverse" where it is "sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Even if one were to accept plaintiffs' conclusory allegation that Eckenwiler targeted Flannery for his speech rather than his defiance of the Mayor's orders, Eckenwiler's complained-of response amounted to nothing more than more speech: verbal criticism unrelated to any official ANC governmental function. Eckenwiler re-posted and disparaged plaintiff's own tweets about the pandemic as "dog whistling," and he criticized Flannery's overall course of conduct as "playing games" for which he has had to face "consequences." Compl. ¶ 35. There is nothing scathing or unduly personal about any of it.

Even coming from a person who serves as an ANC commissioner, this, without more, does not give rise to a constitutional deprivation for First Amendment purposes. *See Block v. Meese*, 793 F.2d 1303, 1313 (D.C. Cir. 1986) (stating that "[w]e know of no case in which the First Amendment has been held to be implicated by governmental action consisting of no more than governmental criticism of the speech's content"). The Supreme Court underscored this in a case

involving members of the board of trustees of a public community college censuring one of their colleagues. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022) ("The First Amendment surely promises an elected representative like [plaintiff] the right to speak freely on questions of government policy.  But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same.").  And plaintiff does not allege any facts that would support the inference that ordinary tweets on a social media platform in response to one's own would chill an ordinary person from speaking out again; indeed sharing, commenting, liking, and re-tweeting or re-posting is the daily currency of social media use.[1]  Because plaintiffs have failed to plausibly allege that Eckenwiler's tweets in and of themselves were sufficiently adverse to sustain a retaliation action, that portion of Count I predicated solely on Eckenwiler's social media communications can be dismissed for failure to state a claim on that basis alone.

### B. The complaint fails to state a plausible claim that defendants' protest of the liquor license was in retaliation for protected speech.

Count One of the complaint also alleges that defendants, "through their official positions as commissioners and of ANC 6C – filed and prosecuted a frivolous protest challenging The Big Board's liquor license renewal" in order to "retaliate against Mr. Flannery for his First Amendment-protected expressions of disagreement with the District's COVID policies."  Compl. ¶ 85.  Defendants contend that their decision to protest The Big Board's liquor license does not qualify as an "adverse action" under the First Amendment retaliation framework, and that the complaint reveals that plaintiffs' constitutionally protected expression was not the "but-for" cause of their actions.  *See* Mot. at 10–15.  They also argue that, even if plaintiffs' allegations are

---

1    This ruling does not express any view on the question of whether a campaign of trolling, harassment, "doxing," "catfishing," or calling for a boycott on social media could be adverse, as nothing of the sort was alleged.

sufficient to state a claim for First Amendment retaliation, they cannot be held liable because they are entitled to qualified immunity.

District of Columbia law permits various individuals or entities to protest the renewal of a liquor license, including abutting property owners, a group of at least five residents sharing a common ground for protest, a citizens' association, the Mayor, the Metropolitan Police Department and, as relevant here, an "affected ANC." D.C. Code § 25-601. If a protest is filed, the Alcoholic Beverage Control Board ("ACBC") schedules a protest hearing, D.C. Code § 25-432, and then the ACBC makes the ultimate determination about whether a license should be renewed. *Id.* § 25-433. Although the ACBC is not required to follow an ANC's recommendations, it is required to give those recommendations "great weight" in accordance with District law. *Id.* § 25-609.

Defendants contend that the filing of a protest is insufficiently "adverse" to amount to a First Amendment violation. Mot. at 11. According to them, "[t]hroughout the renewal process and resolution of the protest, Plaintiffs' license was never suspended, and The Big Board was never prevented from operating. A protest, which serves to notify the decisionmaker of concerns and start a process for a hearing, does not prevent ongoing business and would not deter an individual of ordinary firmness from speech and expressive conduct." *Id.*, citing *Rocky Mt. Rouges, Inc. v. Town of Alpine*, 375 F3d App'x 887, 897 (10th Cir. 2010).

The Court disagrees. The question is not whether an allegedly adverse action succeeds in its aim but whether it is "sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again." *Doe*, 796 F.3d at 106; *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) ("The relevant question is not whether a transfer actually interferes with a particular prisoner's ability to exercise his rights but whether the threat of a transfer would, in the

**App. 79**

first instance, inhibit an ordinary person from speaking."). The threat of losing a license essential to one's business – and the resulting loss of revenue that revocation would entail – is sufficiently onerous to deter a business owner from speaking out again. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (finding a First Amendment violation based on "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" by a legislatively established commission). The fact that private individuals may collectively pursue the same action does not, as defendants suggest, "undermine[] an inference that the mere fact of a protest would deter an ordinary person from speaking," *see* Reply at 4, particularly given the legal provisions governing the D.C. licensing process and the role an ANC can play. *See* D.C. Code § 25-609 (requiring the ACBC to give ANC recommendations "great weight" in its licensing decisions). The purpose of the First Amendment is to restrain the government from using its authority to hamper expression, and the fact that defendants lodged a protest here – not as a collection of individual citizens, but as the ANC – afforded their protest a degree of deference from the ultimate decisionmaker that made it more likely to have a chilling effect. So Count One will not be dismissed on that basis.

Plaintiffs allege that Flannery "invoked his First Amendment rights in expressing his disagreement with the District's COVID policies by posting on Twitter, giving media interviews, refusing to obey orders he understood to be unlawful, and filing a lawsuit challenging the constitutionality of such orders." Compl. ¶ 54. Defendants do not dispute that at least some of these activities are protected conduct, nor could they; "[t]he First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), and activities like posting on social media and offering media

**App. 80**

interviews on a topic of public concern lie at its core.  And there is no dispute that the protest was filed after the plaintiff made his views known.  But that is not the end of the inquiry.

"To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action," *Doe*, 796 F.3d at 107, "meaning that the adverse action against the plaintiff[s] would not have been taken absent the retaliatory motive." *Comm. on Ways and Means, U.S. House of Representatives v. U. S. Dep't of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022), quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

Plaintiffs allege that Flannery "invoked his First Amendment rights in expressing his disagreement with the District's COVID policies by posting on Twitter, giving media interviews, refusing to obey orders he understood to be unlawful, and filing a lawsuit challenging the constitutionality of such orders."  Compl. ¶ 85.  The Court is bound to take this factual allegation as true, but it need not accept his legal conclusions that each of the alleged activities can be properly characterized as "expressive" or as an exercise of his First Amendment rights.

While many forms of conduct may be engaged in for communicative purposes, the Supreme Court has rejected the view that "conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  In *O'Brien,* the Supreme Court was asked to invalidate the conviction of a young man during the Vietnam era for burning his draft card, an act that, at the time, was imbued with symbolic potential. Yet the Court announced:

> [E]ven on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

**App. 81**

*Id.* The case came before the Supreme Court in a different posture than the instant case, as the Court was being asked to strike down the statutory provision prohibiting the destruction of a Selective Service registration certificate. But it is notable that the opinion took into consideration whether the regulation furthered an important or substantial government interest and whether the incidental restriction on alleged First Amendment freedoms was not greater than necessary to further that interest. *Id.* at 377. Here, plaintiffs were admittedly refusing to abide by health and safety regulations, *see* Mayor's Order 2021-147 § I.1, 68 D.C. Reg. 13954 (Dec. 20, 2021) (justifying governmental action because "[t]he COVID-19 pandemic, including exponential spread of its Omicron variant, continues to threaten the health and welfare of District residents, workers, and visitors."); Mayor's Order 2021-148 § I.1, 68 D.C. Reg. 14222 (Dec. 22, 2021) (same), and the complaint reveals that city officials could and did respond to that conduct in isolation without restricting plaintiff's ability to continue to express his views about that at all. *See* Compl. ¶¶ 31–33 (alleging that the District's government suspended The Big Board's operating and liquor licenses, that the parties engaged in negotiations, and that "through all of this, Mr. Flannery continued to express his views opposing the mandates and the government's treatment of his restaurant . . . .").

For those reasons, the complaint does not plausibly allege that plaintiff's exercise of his First Amendment rights was the but-for cause of the defendant's protest, since he explicitly alleges that the protest was in reaction to his unprotected actions – that is, his refusal to obey the orders – among other things. Compl. ¶ 85. Indeed, there are other allegations in the complaint that specifically tie the Commissioners' reactions to plaintiff Flannery's conduct, as opposed to his speech. *See* Compl. ¶ 11 ("Upon information and belief, Defendant Drew Courtney pushed the ANC 6C to vote for and file this protest because of The Big Board's 'bad behavior in recent

years.'"); Compl. ¶¶ 35(a) and (b) (listing Eckenwiler's tweets responding to The Big Board posts with "when you've decided to flout the vaccine mandate . . ." and "[a]ctions have consequences.").[2]

At best, plaintiffs allege that Flannery engaged in both speech and a violation of law that he calls expressive conduct, and that defendants were reacting in varying ways to the combination of his statements and his defiance of the Mayor's Orders. *See* Compl. ¶ 88 ("But for Mr. Flannery's speech and expressive conduct . . . [d]efendants would not have filed and/or maintained the protest against The Big Board's liquor license."). It is not disputed that plaintiff engaged in certain

---

[2]     Even if one were to treat plaintiff's characterization of his admitted defiance of the Mayor's Orders as "expressive" as a factual allegation instead of a legal conclusion, what he would be alleging, at best, is that his "refusing to obey orders" was a mixture of expression and conduct. *See* Compl. ¶ 84. It is true that the First Amendment protects more than pure speech; it also protects conduct that is "inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rts.*, 547 U.S. 47, 66 (2006). *See also Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("[W]e have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.") (internal citations omitted). Yet, as the Supreme Court has explained, "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Id.* at 404 (internal citations and alterations omitted). The communicative aspect of the event must be "overwhelmingly apparent" and not simply a "kernel of expression," *Rumsfeld*, 547 U.S. at 66 (2006), citing *Johnson*, 491 U.S. at 406; *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), and the First Amendment may not apply if the message is not self-evident from the conduct itself, but it is created "by the speech that accompanies it." *Rumsfeld* 547 U.S. at 66. "The fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection." *Id.* Here, plaintiff alleges that his non-compliance was preceded and accompanied by numerous public statements of his views, and the conclusion that plaintiffs were engaging in some form of civil disobedience would not have been "overwhelmingly apparent" from the mere presence of customers without masks in the tavern without further explanation. *See Coronavirus 2019 (COVID-19): Mask Guidance*, DC Health (Dec. 23, 2021), https://perma.cc/R2YC-JFW7 (masks were not required when a person was "actively eating or drinking.")

protected activities, including posting on social media, giving interviews, and even initiating lawsuits challenging the legality of the District's COVID regulations. *See* Reply at 6. But because plaintiffs' own complaint explicitly asserts that members of the ANC 6C were motivated, at least in part, to protest The Big Board's liquor license due to plaintiffs' unprotected conduct – his willful noncompliance with the District's Health and Safety regulations – the complaint fails to state a plausible claim that Flannery's constitutionally protected expression was the but-for cause of the defendants' action. Therefore, plaintiffs' claims for unlawful retaliation will be dismissed, and the Court need not reach the other grounds advanced for dismissal, such as qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs' complaint fails to state a claim upon which relief could be granted and defendants' motion to dismiss [Dkt. # 18] under Fed. R. Civ. P. 12(b)(6) will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2024

**App. 84**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERIC J. FLANNERY, and DRANE FLANNERY RESTAURANT, LLC, T/A THE BIG BOARD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO: 23-2804 (ABJ) |
| MARK ECKENWILER, in his personal capacity, KAREN WIRT, in her personal capacity, CHRISTINE HEALEY, in her personal capacity, DREW COURTNEY, in his personal capacity, JOEL KELTY, in his personal capacity, and JAY ADELSTEIN, in his personal capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

Notice is hereby given this 29th day of October 2024, that Plaintiffs Eric J. Flannery and Drane Flannery Restaurant, LLC, T/A The Big Board hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the judgment of this Court entered on the 30th day of September 2024 in favor of Defendants Mark Eckenwiler, Karen Wirt, Christine Healey, Drew Courtney, Joel Kelty, And Jay Adelstein, in their personal capacities, against said Plaintiffs.

1

**App. 85**

Dated: October 29, 2024

Robert D. Alt (*pro hac vice*)
David C. Tryon (*pro hac vice*)
Jay R. Carson (*pro hac vice*)
Alex M. Certo (*pro hac vice*)
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
robert@buckeyeinstitute.org
d.tryon@buckeyeinstitute.org
j.carson@buckeyeinstitute.org
a.certo@buckeyeinstitute.org

Respectfully submitted,
*/s/* David L. Rosenthal

David L. Rosenthal (D.C. Bar ID 1660535)
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
david@consovoymccarthy.com

Patrick Strawbridge (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548
patrick@consovoymccarthy.com

*Attorneys for Plaintiffs*

**CLERK:**    Please mail copies of the above Notice of Appeal to the following at the

address indicated:

Helen Marie Rave
OFFICE OF ATTORNEY GENERAL, D.C.
400 6th Street, NW
Washington, DC 20001

*Attorney for Defendants*

**App. 86**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, this appendix was filed with the Clerk via ECF, which will email everyone requiring service.

Date: April 7, 2025          _/s/_ David L. Rosenthal